## NATIONAL AID LIFE ASS'N v. KERR.

No. 25985.   June 2, 1936.

Rehearing Denied July 1, 1936.

Application for Leave to File Second Petition for Rehearing Denied Nov. 10, 1936.

Snyder, Owen & Lybrand and Kleinschmidt & Johnson, for plaintiff in error.

Martin & Spradling, for defendant in error.

PER CURIAM. The parties will be referred to herein as they appeared in the lower court, and Theophilus Kerr will be referred to as the insured.

In this case the plaintiff, Myrtle Kerr, as the surviving widow of Theophilus Kerr, filed suit in common pleas court of Tulsa county to recover $1,000 death benefit alleged to have been due and payable from the defendant, National Aid Life Association, by reason of a benefit certificate issued by that association to her deceased husband.

The evidence in the case, while extended, does not show any material conflict. A benefit certificate was issued by the defendant company to the insured long prior to the filing of this suit, and which provides as follows:

"The within named member agrees to pay assessments levied by the management of $2.60 upon the death of a member of the group of which he is a member, payable within fifteen days from date of call * * * assessments shall be given by United States mail to the post office address last furnished to the Association by the member. Said member agrees further that failure by him or her to pay any death * * * assessments within the time herein set forth * * * shall terminate his or her membership and all rights or claims he or she may have had in or against the Association on the date of said lapse."

And the application for said benefit cer-

tificate filed with said defendant company provides as follows:

"Notice of any assessment or dues levied may be mailed to the undersigned at the address given below or at the last address of the applicant known to the secretary in case of change of address. * * * Failure, neglect or refusal of applicant to pay any assessment within fifteen days after notice thereof has been so mailed shall render his benefit certificate null and void. The Association shall thereby be released from any and all liability thereunder."

And section 9, article 7, of the by-laws of said defendant company provides as follows:

"On the fifteenth (15) day * * * from the levying of an assessment * * *, all whose payment thereof has not been received at the home office or by a duly appointed collecting agent shall be automatically dropped from the membership roll and their said respective benefit certificates shall thereby lapse."

The evidence in this case shows that the insured was assigned to group 19 as a member, and under his benefit certificate the insured agreed to pay assessments levied by the defendant company for a certain amount on the death of a member of the group of which he was a member, payable within 15 days from the date of call, and the failure to pay any assessment within the time herein set forth should terminate his membership and all rights or claims against the defendant company on the date of said lapse, and it is admitted by the defendant company that said benefit certificate was in full force and effect on April 12, 1933, and the question to determine is whether this benefit certificate had lapsed for nonpayment of an assessment.

The proof further shows that two members of group number 19, to wit, D. W. Wiley and Lorena Ida Good, died and that an assessment was levied in the sum of $2.20 according to the terms of said policy and the by-laws of said defendant association.

It appears that assessment was ordered by the executive committee of defendant association, and that it was made and payable on April 12, 1933, and the uncontradicted proof shows that notice of said assessment was mailed to the defendant in Tulsa on the afternoon of April 11, 1933, and the uncontradicted testimony further shows that according to the usual course of mail this notice of assessment so mailed would reach the address of the insured on April 13, 1933, and it appears that on April 21, 1933, the insured made out a check for the sum of $10 payable to the defendant company

and gave said check and envelope to a colored porter in his filling station, with instructions to mail the same, but that this colored porter put the letter with the check therein contained in his pocket and failed and neglected to mail the same, and that on April 28, 1933, the insured was taken to the hospital, at which time he was very sick, and that said insured died in said hospital on May 19, 1933, and that on April 27, 1933, the defendant company mailed a notice of lapse of said policy to the insured, and that this was received on April 29, 1933, at which time the plaintiff in this case, wife of the insured, called the colored porter and asked him whether he had mailed the check to the insurance company and found that he still had same in his pocket, and that the letter was immediately sent containing the check on the same date, April 29, 1933, to defendant company with certain affidavits of mailing, which was received by the defendant company on May 1, 1933, and retained by them until May 22, 1933, at which time the check was returned and the insured notified of the lapse of the policy because of the failure to pay the assessment within 15 days from the date of levy or call and failure to furnish affidavit of good health as required by said benefit certificate.

The question to determine in this case is whether the assessment of $2,20 was legally made and whether it was paid by the insured within 15 days from date of levy thereof or date of call.

It is contended by the plaintiff, in the first place, that the insured had a deposit with the defendant in an amount more than sufficient to meet said assessment at the time of call, but the evidence clearly shows that the deposit which insured had with the defendant company had been exhausted and the insured had been notified of this fact. The proof shows that if he had a deposit sufficient to pay the assessment, one particular kind of notice was sent to him showing that his deposit had been charged with the amount of the assessment and showing the amount he had on deposit after paying said assessment, and when he did not have sufficient deposit to pay the assessment, another type of notice was sent to him requesting the payment of the assessment, and upon the notice of the particular assessment in question the evidence shows conclusively that the insured was notified to pay the assessment of $2.20 and and that he did not have any deposit with the defendant company. Furthermore, the

fact that on April 21, 1933, after receiving said notice the insured mailed a check to the defendant company for $10, and which shows that he did not presume or think that he had a deposit with the insurance company sufficient to pay said assessment.

The next contention made by the plaintiff is that a deposit in the United States post office at Tulsa of a $10 check on April 29, 1933, was payment of the assessment within 15 days from the date of call. The evidence in this regard shows that this notice of assessment was mailed to the insured on April 11, 1933, and according to the usual course of mailing it would be delivered to the defendant's residence on the morning of April 13, 1933, and according to plaintiff's contention, if the insured had 15 days from the date of receiving said notice within which to pay said assessment before the policy lapsed, and as the payment was not mailed in Tulsa until the 29th day of April, 1933, which was 16 days from the date of receipt of the notice, then the policy would lapse under the most favorable theory for the plaintiff.

We do not mean to interpret the benefit certificate and the by-laws of defendant company to mean the insured had 15 days from the date of receipt of said notice of assessment and that he could employ the United States mail to transport the check in payment of this assessment and that a deposit of the check in the post office at Tulsa amounted to the payment of the assessment, but this is the contention made by plaintiff, and the evidence under her own contention shows that the policy had lapsed.

Another contention made by plaintiff is that one is estopped to repudiate the obligation necessarily resulting from custom. And in this she contends that the defendant company had established a custom of allowing the insured to make deposits and pay the assessments out of these deposits and that they were bound by this custom. This could possibly be true; however, we are not passing on this question in this case, because it is not necessary, as the evidence clearly shows that the insured did not have any deposit with the defendant company at the time of the levy of this assessment, and that the insured was notified of this fact.

We are aware of the fact that courts do not favor forfeitures, but in this case it is useless to determine what was meant by the phrase "Fifteen (15) days from the date of call or fifteen (15) days from the date of levy of an assessment as provided in the benefit certificate of this company," because, under the facts which are undisputed or uncontradicted, the assessment was duly and legally made and made payable on April 12, 1933, and notice was mailed on April 11, 1933, and if delivered in the usual course of mail, would have been received by the insured on April 13, 1933, and under the most favorable theory for the plaintiff this policy lapsed on April 28, 1933. And it is further useless to pass on the question as to whether a deposit of the check in Tulsa on April 29, 1933, in the United States post office, duly addressed and mailed, would amount to the payment of the assessment at that date instead of the date when it was received by the defendant company, because of the fact that under no theory could the insured have had until April 29, 1933, to pay this assessment. The uncontradicted evidence is that the policy had lapsed and had not been reinstated at date of insured's death. See Great Southern Life Ins. Co. v. Brooks, 166 Okla. 123, 26 P. (2d) 430.

At the conclusion of the evidence in this case in the lower court, both plaintiff and defendant requested the court for peremptory instructions and neither party complained of the action of the court in taking the case from the jury and directing a verdict. As there was no issue of fact to be tried, it was properly a question of law for the court to try. The judgment of the lower court should have been for the defendant, and the jury should have been directed to return a verdict in favor of defendant, instead of plaintiff.

The cause is reversed and remanded, with directions to the trial court to enter judgment in accordance with the views herein expressed.

The Supreme Court acknowledges the aid of District Judge Roy Paul in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, upon consideration, this opinion, as modified, was adopted by the court.

OSBORN, V. C. J., and RILEY, BUSBY, WELCH, and GIBSON, JJ., concur. CORN, J., dissents. McNEILL, C. J., and BAYLESS and PHELPS, JJ., absent.