## NATIONAL AID LIFE ASS'N v. KERR.

No. 26034. May 4, 1937.

Kleinschmidt & Johnson and Snyder, Owen & Lybrand, for plaintiff in error.

Martin & Spradling, for defendant in error.

BUSBY, J. Myrtle Kerr, as plaintiff, instituted this action in the district court of Tulsa county to collect from the National Aid Life Association the sum of $2,500 which she asserted was due her by reason of a benefit certificate issued upon the life of her husband, Theophilus Kerr, who died on the 19th day of May, 1933.

Upon the trial of the cause a jury was impaneled to determine the issues, but at the close of the evidence the jury was discharged upon agreement of the parties and the controversy was submitted to the trial court for determination. The decision was in favor of the plaintiff, and the National Aid Life Association appeals.

There is no material controversy in the facts. In order to provide protection after his death for those dependent upon him during his life, Theophilus Kerr in 1925 purchased a benefit certificate for $2,500 from the Oklahoma Aid Association, which later became and now is the National Aid Life Association. In 1931 Mr. Kerr directed a change of beneficiary, and in connection with the change a new benefit certificate was issued in lieu of the old.

The contract between Mr. Kerr as a member of the association and the association consisted of the benefit certificate, the application of Mr. Kerr under which he was accepted as a member, the by-laws of the association, and the statutes under which the certificate was issued. Holford v. National Aid Life Ass'n, 177 Okla. 284, 58 P. (2d) 588; Home Aid Ass'n v. Akers, 176 Okla. 561, 56 P. (2d) 770.

The various members of the association were placed in circles or groups. As the owner of the certificate upon which this action was based, Mr. Kerr was placed in a group designated by the association as No. 22. By the terms of the agreement between the parties, he was required to pay, in addition to regular semi-annual assessments, death benefit assessments which it was contemplated should be made when another member of the same group should die.

The deceased, until immediately before his death, kept his assessments paid with promptness and diligence, which demonstrates his care and caution in endeavoring to protect his rights under the certificate held by him. In fact, during most of the time he held the certificate he kept a small amount on deposit with the company to meet assessments as they were made. On April 14, 1933, he received at his address in Tulsa, through the mail from the Oklahoma City office of the association, a notice of death benefit assessment, which notice had been deposited in the mails of Oklahoma City on April 12th to advise him of an assessment made as of April 13, 1933. On April 21, 1933, he made out a check to cover the assessment, enclosed the same in an envelop addressed to the association at Oklahoma City. He delivered the envelop with the enclosed check to a negro porter who worked for him with directions to deposit the same in the mails. The envelope was one furnished by the defendant association and enclosed with the notice of death benefit assessment. The negro forgot to carry out the directions. He carried the envelope containing the check around in his pocket until April 29, 1933. On that date, Mrs. Kerr received a notice from the defendant association addressed to her husband to the effect that another certificate (the certificate involved in National Aid Life Ass'n v. Kerr, infra) had lapsed for nonpayment of the death benefit assessment and that a certificate of good health would be required for reinstatement. This

could not be given because on the day before Mr. Kerr had been sent to the hospital stricken with an illness which proved fatal. Mrs. Kerr communicated with the porter, who, being reminded of his oversight, deposited the envelope in the mails at Tulsa. The date of mailing was April 29, 1933, the 15th day after Mr. Kerr had received the notice of assessment. The check, however, was not received by the defendant association until about two days later.

According to the contract between the parties, the member had 15 days in which to pay a death benefit assessment. The whole controversy in this case depends upon the proper method of computing this time. The association urges that the date from which the time should be computed was April 13, 1933, that being the date as of which the death benefit assessment was made. The plaintiff urges April 14th as the proper date from which to commence the computation of the time, that being the date on which the notice in the regular course of the mails would reach the member and on which, according to the finding of the trial court, the notice did reach Mr. Kerr. The association urges, in order to prevent a lapse of the certificate, the check must have been received at its Oklahoma City office on or before April 28th, the 15th day from April 13th; whereas, the plaintiff asserts that a deposit of the check in the mails at Tulsa on April 29th, the 15th day after April 14th, the date of the receipt of the notice of assessment, was sufficient in point of time to keep the benefit certificate in good standing.

The solution of the problem requires a consideration of the relative contractual provisions as contained in the benefit certificate, the application of the member under which membership was obtained, and the by-laws of the association, interpreted, of course, in the light of legal principles which are available and appropriate as a guide.

The law as well as equity abhors a forfeiture in this class of cases and when a contract between a benefit association and its member is susceptible of either of two constructions, one of which will sustain, while the other will destroy the contract, the former will be adopted "to avoid a forfeiture." United Brotherhood of Maintenance of Way Employees & Railway Shop Laborers v. Blair, 140 Okla. 28, 282 P. 141.

The trial court, upon consideration of the contractual provisions and the relations between the association and Mr. Kerr, its member, sustained the view of the plaintiff and rendered judgment accordingly. The question here is whether that view is tenable, not whether another view could have been adopted.

We shall first determine the proper date for commencing the computation of the 15-day period within which payment could be made.

The benefit certificate, in the possession of the member at the time of his death, provided:

"The within named member agrees to pay the assessments levied by the management of two dollars and sixty cents ($2.60) upon the death of a member of the group of which he is a member payable within fifteen (15) days from date of call, of which sum 10 cents shall be used for expenses. * * *"

And also contained the following relative provision:

"* * * It being agreed that notices of death and emergency reserve fund assessments will be given by United States mail to the post office address last furnished to the association by the member. Said member agrees further that failure by him or her to pay any death or emergency reserve fund assessment within the time herein set forth, or semi-annual dues by the fifteenth day of the months in which same are payable, shall terminate his or her membership and all rights or claims he or she may have had in or against the association on the date of said lapse."

In interpreting the meaning of the foregoing provisions, it is important that due consideration be given the purpose to be served thereby. When a member joins the defendant association and procures a benefit certificate, he is placed in a circle or group consisting of himself and approximately 1,000 other persons holding similar certificates. When a member of the group dies, a death benefit assessment is made. While death is certain, the time thereof is not. It is not contemplated that each individual member shall assume the responsibility of ascertaining the fact and time of death of each of the other members. Nor can it be safely and sensibly said that each and all members shall pay periodical visits to the association to personally inquire concerning the happening of a death in the circle or group. Thus the provisions in the certificate for call and notice by mail are designed to perform a particular function, namely, advise the member that a death benefit assessment has been made. The word "call," as defined by Webster, is said to mean,

among other things, "to demand payment of, especially by formal notice." This is the sense of its meaning which is most appropriate to the situation presented by the contractual relations existing between the parties involved in this case. The use of the word "call" connotes not only the making of a formal death benefit assessment, but the communication of the formal demand for payment thereof to the member. The mails are prescribed as the method by which the call shall be completed by making the formal demand. The call is not completed until the formal demand is made, or, at least, until sufficient time has elapsed after the mailing of the notice for it to reach the member in the usual course of the mails. Thus in this case the call was not completed until April 14, 1933, and the 15-day period within which payment could be made extended to and included April 29th, the day on which the check was mailed. (See, in connection with the language here interpreted, Home Benefit Ass'n of Angelina County v. Jordan (Tex. Civ. App.) 191 S. W. 725.) The trial court so held, and we approve its determination of this point.

There is some language appearing in the by-laws of the association and in the application which standing alone would lend color to the contention of the association. For instance, it is provided in the application that:

"Failure, neglect or refusal of the applicant to pay any assessment within fifteen days after notice thereof has been so mailed shall render his benefit certificate null and void."

From which it is argued that the act of mailing as therein contemplated is complete upon the deposit of the notice in the post office. Assuming, without deciding, that the language should be so construed, it is effective only to create an uncertainty in the meaning of the entire contract, since such an interpretation renders it clearly in conflict with the provisions of the certificate itself, which is also a part of the contract.

Other provisions of the by-laws and application may operate to impose the risk of loss of notice by miscarriage in the mails upon the member. Upon that point we do not comment, since no miscarriage of the mails is involved in this action. We hold, as did the trial court, that the call was not completed until a sufficient time had elapsed after the mailing of the formal notice to allow it to reach the member in the usual course of the mails.

We next consider the effect of mailing the

check within the 15-day period. The by-laws of the association provide that:

"On the 15th day * * * from the levying of assessment * * * all whose payment thereof has not been received at the home office or by a duly appointed collecting agent shall be automatically dropped from the membership roll."

Upon this provision the association places great stress. It is urged that by reason thereof the date of receipt at Oklahoma City and not the date of mailing at Tulsa should govern. At least one complete answer to this argument rests upon the principles of waiver. Waiver is the intentional relinquishment of a known right. Provisions of this character contained in the by-laws of an association may be waived by the conduct of the association. Knights of the Maccabees of the World v. Johnson, 79 Okla. 77, 185 P. 82; K. of P. Lodge North America, etc., v. Ewing, 133 Okla. 179, 274 P. 22.

At the time of the vital occurrences in this controversy, the association had a collecting agent at Tulsa. Mrs. Kerr, when she learned of the oversight of the colored porter, could have avoided all controversy on this point by going to the Tulsa office and there delivering the amount of the assessment. This she would, no doubt, have done if that course of conduct had been advised or even suggested in the notice. But it was not. On the contrary, the association had by enclosing an envelope for remittance addressed to its Oklahoma City office directed the manner of making payment and the place at which payment should be made. McCluskey v. National Life Ass'n of Hartford, 28 N. Y. S. 931; Primeau v. National Life Ass'n, 28 N. Y. S. 794. The association is thus in the position of having directed a different and slower method of making payment than that which was available to the assured through the collecting agency at Tulsa. It cannot now take advantage of the delay occasioned by the insured following its directions and making remittance through the mails to the home office at Oklahoma City. Assuming the association had a right to the actual receipt of payment on or before April 29th, it is apparent the member had a right to make the payment at Tulsa. Since the company directed that payment be made through the mails to the Oklahoma City office, it will be deemed to have intentionally relinquished its right to forfeiture for nonpayment on the 29th to the extent of the time required for payment to reach Oklahoma City from Tulsa. See Primeau v. National Life Ass'n,

supra. While the method of pleading this theory is by no means perfect, we deem the facts sufficiently pleaded to present the issue upon which we decide the point. Clearly the issue was within the purview of the proof offered.

The fact that the payment in this case was made by check does not alter the result, since it is shown that the check was good and that a custom of dealing had been established whereby remittances were in all cases made by check, thus creating an implied agreement on the part of the association to receive and accept payment in that manner. Hollowell v. Life Ins. Co. of Virginia (N. C.) 35 S. E. 616.

The distinction between this case and the companion case of National Aid Life Ass'n v. Kerr, 178 Okla. 136, 61 P. (2d) 1052, lies in the fact that in that case the remittance was mailed on the 16th day (instead of the 15th) after the receipt of notice.

The judgment of the trial court was in accord with the views herein expressed. It is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and CORN, JJ., concur.