## SOVEREIGN CAMP, W. O. W., v. SABALZA.

No. 3349.

Court of Civil Appeals of Texas. El Paso.

March 26, 1936.

Rehearing Denied April 16, 1936.

Van Haile McFarland and J. R. Sanford, both of Eagle Pass, for appellant.

David E. Hume, of Eagle Pass, for appellee.

WALTHALL, Justice.

On July 20, 1931, appellant association issued to Salvador Sabalza its fraternal beneficiary certificate of life insurance in the sum of $500, in which appellee, wife of the insured, is named as beneficiary. On the 29th day of August, 1933, the insured died, and appellant having refused to pay the certificate, the beneficiary appellee brought this suit to recover on the certificate, and for penalty and attorney fee.

Appellant answered by general demurrer, general denial, and pleaded certain provisions of the certificate, sometimes referred to as the policy. The case was tried with a jury and submitted upon special issues. On the findings of the jury the court entered judgment in favor of appellee.

Appellant's by-laws, in effect and applicable here, provide for the payment of monthly installments of an annual assessment, and upon failure to make such payment on or before the last day of the month for which it is due the insured thereby becomes suspended, his certificate becomes void, the policy contract terminates.

Under appellant's constitution and by-laws a member suspended for nonpayment of an installment of assessment, if in good health, may again become a member by

payment of the current installment and all installments which should have been paid. Whenever installments are paid for the purpose of again making him a member, such payments are held to warrant that the member is at the time of making the payment in good health, and that he will remain in good health for thirty days next thereafter. Appellee alleged that by general custom and course of dealing, and in accepting payments made by the insured continuously after the last day of the month, and by a certain communication from the president of the order relative to the time of the payment of dues, appellant was estopped to deny the validity of the certificate. Appellee further pleaded that when the insured paid the dues on July 13, 1933, for June, 1933, the insured was then a man of approximately sixty years of age, and while not in perfect health, he was in good health and remained so for thirty days following said payment.

■ On issues submitted, the jury found the insured was in good health on July 13, 1933, and remained in good health for thirty days next thereafter.

Appellant submits that the evidence was insufficient to support the jury's findings.

Appellee testified: Was the wife of the assured; he died on August 27, 1933; was at his funeral; he had not been very ill just before his death, his illness itself was two or three days before his death; at the time of his death he was not working, was on a vacation; just before his death he went around as usual, conversed with witness and followed his usual habits; he went to bed about a week before his death; before he went to bed he was in delicate health; he was born February 24, 1874; he conducted himself as to his health like ordinary persons of his age.

Jose Guerra testified: About twelve or thirteen days before Sabalza died witness saw him with his clothes on comporting himself in his ordinary habits.

We have concluded that in view of the definition of the term "good health," as used in appellant's constitution and by-laws, and as used by the court in submitting the issues to the jury, the evidence is sufficient to justify the submission to the jury of the issues as to the good health of the insured on July 13, 1933, and whether he remained in good health for 30 days next thereafter. The court instructed the jury the term "good health," as used in the charge, does not mean perfect health, nor absolute per-

fection, but is a state of health free ,from any disease or ailment that affects the general soundness and healthfulness of the system seriously, that is, that the insured be not afflicted with a disease or bodily infirmity of a substantial nature, which affects the insured's general health, or which naturally increases the risk to be assumed by the insurer. The inquiry as to good health as to time was directed to July 13, 1933. Witness said the illness of assured became aggravated two or three days before his death, on the 27th day of August, following, more than forty days thereafter.

■ The jury found that appellant had adopted and pursued a policy or course of dealing with Sabalza that led him to believe appellant would waive the provisions of its by-laws as to forfeiture of the policy by reason of his failure to pay the monthly installment of assessment on or before the last day of each month.

Section 65 of the by-laws provides, in substance, that a member suspended for failure to pay the premium as provided could again become a member by paying the premium within three calendar months, if at the time of the payment the suspended member were in good health and should so remain for thirty days thereafter. Sabalza became suspended for failure to pay the June installment.

As stated, Sabalza paid the June premium on July 13, 1933. The payment was accepted.

Appellant submits there was no evidence to support the jury's finding. The question of good health is not involved in this proposition, nor is the time of the payment of the premium. The question presented is purely one of waiver, that is, by appellant's policy of accepting premiums after they became due, and paid within the three months' period was Sabalza led to believe appellant would accept the June premium.

Jose Moreno, appellant's financial secretary and collector for the local camp, testified: Without quoting the verbiage of question and answer, Sabalza was suspended for nonpayment of premiums on several previous occasions, and was reinstated on payment.

"Question: Why did he (you) receive those payments when they were made late? Answer: I have done so all the time, and I would send the month in the following report.

"Question: Does he (you) do that with every body or just with Sabalza? Answer: With everybody."

Appellant retained the premium paid on July 13, 1933, until after Sabalza died on the 27th day of August, following, and on notice of his death on September 29th tendered the premium paid to appellee. Appellant insists that there would be no waiver of a forfeiture of the certificate in the absence of actual knowledge of the condition of health of the member, and that any reinstatement on payment of the premium is conditioned on good health, and that the member so remained for thirty days after payment of the premium, and that there is no evidence of such knowledge in this case. If the insured was in good health and so remained for thirty days, the question would not be important. However, we will submit our views on the proposition.

In Calhoun et al. v. The Maccabees, 241 S.W. 101, 104, the Commission of Appeals held that the acceptance of assessments accruing after a certificate in a fraternal benefit association has been forfeited is inconsistent with the forfeiture, and amounts to a waiver of forfeiture. In discussing the question of waiver, the court quotes at length from Supreme Lodge v. Wellenvoss (C.C.A.) 119 F. 671, the opinion by Judge Day, then a member of the United States Circuit Court of Appeals, and in which Judge Day quotes with approval from Stylow v. Wisconsin Odd-Fellows' Mut. Life Ins. Co., 69 Wis. 224, 34 N.W. 151, 153, 2 Am.St.Rep. 738. In that case Judge Taylor said: "When no fraud has been practiced by the insured in concealing his state of health at the time the payments are made, and the company receives such payments out of time, when it might refuse payment, and declare the insurance forfeited, it cannot accept the money and keep it, and still insist upon a forfeiture."

Judge McClendon for the Commission of Appeal, after making the above quotation, says that the payment of an assessment is valid and sufficient when made in good faith and without intent to defraud or injure the society is established by a number of adjudicated cases, and states the cases as so holding.

In Sovereign Camp, W.O.W., v. Hines (Tex.Civ.App.) 273 S.W. 927, 928, it is said the findings of fact show that the insured was not in good health at the time he paid his arrearages to the clerk and at the time the clerk attempted to reinstate him in the order, and that he did not remain in good health for thirty days thereafter; the findings of fact further show that Hines died on the third day after such attempted reinstatement. The court then said: "It was not, however, shown that there was any fraud or concealment on the part of the insured by which the clerk of the local camp was induced to accept said payment and to attempt to reinstate him."

Here, as in the Calhoun and Hines Cases, supra, the appellant insurer had knowledge that the insured had not paid the installment due for the month of June, and that by reason thereof the certificate of insurance was forfeited on July 13, 1933, when the payment was made and accepted by the insurer.

Under the Calhoun Case, the acceptance of the premium was an unequivocal act done by the insurer after the forfeiture, recognizing thereby the continued existence of the certificate, which was inconsistent with a forfeiture, and constitutes a waiver.

In Bailey v. Sovereign Camp, W.O.W., 116 Tex. 160, 286 S.W. 456, 457, 288 S.W. 115, 47 A.L.R. 876, the Supreme Court, after commenting on the Calhoun Case, supra, said: "This brings us to the question as to whether or not there was an unequivocal act by the insurer recognizing the existence of the policy and benefit certificate, and which was wholly inconsistent with the forfeiture. The defendant order accepted the dues and premium upon Bailey's certificate * * * and accepted same without requiring a written warranty, a thing they were not forced to do. Nothing could be more inconsistent with the forfeiture of an insurance policy or certificate than the acceptance and retention of the premium paid for the protection afforded by the policy, as was done in this instance," and referred to the case of Supreme Lodge v. Wellenvoss, supra, and quoted therefrom to the effect that "the receipt of a premium after the accruing of a cause of forfeiture of which the company has knowledge is a waiver of the right to insist upon it." Continuing the opinion and illustrating the force of the rule stated where the premium is retained with a knowledge of the forfeiture and the premium retained after the death of the insured, Judge Flewellen, Special Chief Justice, said: "One who places his bets after the dice are thrown is sure to win."

There is nothing in the Constitution or by-laws of appellant in the evidence, that

required the insured, on reinstatement, to present a certificate of good health.

We have concluded the evidence fully justified the submission of the issues to the jury, and that the undisputed evidence shows a waiver of forfeiture of the certificate.

The case is affirmed.