Elliott et al., Appellants, *v.* Lindquist et al.

Argued March 28, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edw. J. I. Gannon,* with him *Hazlett, Gannon & Walter,* for appellants.

*William H. Eckert,* with him *Edward H. Schoyer* and *Smith, Buchanan & Ingersoll,* for Thomas H. Gough et al., appellees.

*James D. Gray,* with him *James H. Gray,* for O. B. Lindquist et al., appellees.

OPINION BY MR. JUSTICE LINN, April 14, 1947:

The plaintiffs and the defendants are all the stockholders of the Logan Lumber Company, a Pennsylvania business corporation, organized in 1918. There are three plaintiffs but only two have appealed. The six defendants are the remaining stockholders. The plaintiffs sued to set aside purchases of stock made by two of the defendants from a stockholder named Detwiler. The plaintiffs contended that the by-laws of the company guaranteed to them the right to participate in the purchase of the stock Detwiler desired to sell and that they

had been deprived of the right. Defendants pleaded that the by-laws, relied on by plaintiffs, were not effective, that they had been suspended or abrogated by the company's and the stockholders' disregard of their provisions in every transfer of stock made since the company's organization. The case was heard by Judge PATTERSON who found the facts in accord with defendants' contentions; the court in banc affirmed his findings and dismissed the bill.

As it is conceded that plaintiffs have no case if sections 6 to 10 of the by-laws* are out of the way, we come at once to the defense asserted. The by-laws provided:

"Section 6. No stockholder in said company shall sell or assign his stock or any part thereof, to any person or persons, firm or other corporation, not a stockholder, or pledge the same or any part thereof by endorsement resulting in a delivery to a transferee who is not a stockholder, without first giving notice in writing to the Board of Directors and an opportunity given for the purchase thereof at the book value at the date of such notification. In case said Board fails to elect within thirty (30) days to purchase said stock, then the owner may dispose of the same as he shall see fit.

"Section 7. No majority, stockholder or stockholders shall be permitted to purchase additional stock in said company until an opportunity shall first be given to each stockholder owning a lesser number of shares to equalize his or their shares of stock by purchase.

"Section 8. The Secretary of the Board of Directors shall notify all stockholders in writing of the proposed sale, or sale of any stock of said company, at least twenty (20) days prior to any regular or special meeting of the Board of Directors and an opportunity given to all

---

* In 1918, at the organization meeting of the Company, by-laws were adopted. In the next year, additional by-laws, those now in question, were adopted, apparently with the idea of retaining the power to determine who should become stockholders. Numbers 6, 7 and 8, especially if read together, are so uncertain and ambiguous as to make practical application difficult if not impossible.

minority stockholders to appear and bid for the purchase of the whole or any part thereof. The whole or any part of said stock shall be allotted to the stockholder who shall bid the highest price therefor at said meeting.

"Section 9. In case said minority stockholders shall fail to appear and bid for the purchase of said stock, then the majority stockholders shall be entitled to purchase the same or any part thereof.

"Section 10. Notices mailed to each stockholder at his address as the same appears on the records of the company, shall constitute the notice required under Section six (6) to nine (9) inclusive, of these By-Laws."

The learned court was of opinion that the by-laws "constitute the contract between the stockholders and are subject to the rules governing a written contract signed by all the parties. It follows that contracting parties cannot ignore their own contractual covenants with impunity and still seek to hold the others to the contract," citing *Constructors Association v. Seeds,* 142 Pa. Superior Ct. 59, 61, 15 A. 2d 467, in support of that conclusion. Parties to a written contract may abandon, modify or change it by words or by conduct: *Weldon & Kelly Co. v. Pavia Co.,* 354 Pa. 75, 79, 46 A. 2d 466; *Jacobs v. Wilkes-Barre Twp. School District,* 355 Pa. 449, 453, 50 A. 2d 354. By-laws consistent with constitution and statute are really the private statutes of the company enacted by the stockholders for the regulation of its affairs: compare *Bagley v. Reno Oil Co.,* 201 Pa. 78, 50 A. 760. Generally, a man may waive the benefit of a statute: compare *Redstone Twp. Sch. Dist.,* 284 Pa. 325, 331 et seq., 131 A. 226. No case has been called to our attention in which we have passed on the effect of long continued disregard of by-laws by the only parties who could be interested in the enforcement of their provisions. In other states the point has been ruled in accord with defendants' contention: see *Huxtable v. Berg,* 98 Wash. 616, 623, 168 P. 187; *Bay City Lumber Co. v. Anderson,* 8 Wash. 2d 191, 204, 111 P. 2d 771;

*Farmers' State Bank v. Haun,* 30 Wyo. 322, 345, 222 P.
45; *Salvail v. Catholic Order of Foresters,* 70 N. H. 635,
50 A. 100; *Buck v. Troy Aqueduct Co.,* 76 Vt. 75, 56 A.
285; *Mutual B. & L. Ass'n. v. Guice,* 27 Ala. App. 7, 165
So. 864; *Bowler v. American Box Strap Co.,* 49 N. Y. S.
153; *Soverign Camp W. O. W. v. Sabalza* (Tex.) 93 S. W.
2d 177; *Modern Woodmen v. Harper* (Tex.) 94 S. W.
2d 157; *Matthews v. Fort Valley Cotton Mills* (Ga.)
176 S. E. 505; *National And Life Ass'n. v. Kerr,* 180
Okla. 59, 67 P. 2d 935; *Grand Valley Irrigation Co. v.
Fruita Improvement Co.,* 37 Colo. 483, 508, 86 P. 324,
332. In this last case the reason for the rule was stated:
"The authorities which we cited clearly sustain the
proposition that, since this provision of the by-laws was
for the benefit and protection of the stockholders them-
selves, they might waive it, and such by-law, as to them,
would be repealed by their acquiescence in the uniform
practice of the company in disregarding it."

Appellants, in contending that the by-laws cannot
be suspended or abrogated by non-usage, refer to sec-
tion 5 of the by-laws providing that they may "be altered,
amended, modified or added to by the vote of stockholders
holding a majority of the stock of the company, present
in person or by proxy, at any general or special meeting
(called for that purpose) of stockholders of the com-
pany. A copy of such amended By-laws shall be sent
to each stockholder within 30 days after their adoption."
We do not think that section was intended to exclude
the right of all the stockholders to waive provisions of
the by-laws made for their benefit.

Whether the stockholders had waived or disregarded
the by-laws sufficiently to support the conclusions of the
chancellor is the remaining question. The evidence gives
all the instances. In considering them it is desirable to
know that R. B. Elliott, one of the plaintiffs, was at-
torney for the company from its incorporation until
1941; he prepared these by-laws and in cross-examina-
tion admitted that they had not been complied with in

a single instance. Mr. Elliott was Secretary of the Company from April 16, 1928, until February 1, 1941. A witness testified that in November, 1943, when the repeal of these by-laws was proposed as a subject for action at the next stockholders' meeting to be held in February, 1944, Mr. Elliott stated: "I don't care, these by-laws have never been observed." In 1944, they were formally repealed by corporate action. Detwiler was one of the original stockholders and was president and a director until 1937. Thomas H. Gough had been a director since 1919 and president since 1937. E. C. West had been a director from the beginning and during part of the time was secretary and treasurer. O. B. Lindquist was one of the incorporators and a director for many years. G. H. Lindquist has been secretary since 1941.

On February 8, 1919, F. W. Ekas bought 70 shares of stock and received certificate No. 7. Five days later he executed a declaration of trust that he held the stock for his wife, Blanche. C. Ekas, now one of the appellant plaintiffs. After her husband's death, she, on January 10, 1939, presented the certificate endorsed by her as executrix with the declaration of trust attached, for transfer to herself. The stock was transferred to her without proceeding in accord with the by-laws.

On April 4, 1922, William Henry, owner of 100 shares, sold them to four other stockholders, each purchasing 25 shares, a purchaser being R. B. Elliott, one of the plaintiffs. On April 5, 1928, G. R. Burdick sold 350 shares to six different stockholders. Those sales were made and the certificates issued to the ten purchasers without proceeding in accord with the by-laws.

On April 12, 1940, the plaintiff, R. B. Elliott, assigned 25 shares of his stock to his son, Robert George Elliott, one of the plaintiffs and an appellant. The assignee had not theretofore been a stockholder. On June 8, 1938, O. B. Lindquist assigned 24 shares of his stock to his son, G. H. Lindquist, not then a stockholder. On December 18, 1942, Thomas H. Gough, Sr., assigned

36 shares of his stock to his son, Thomas and to his wife. Florence, each receiving 18 shares. These transactions were carried out without proceeding in accord with these by-laws.

On February 27, 1943, W. F. Detwiler sold 425 shares to two other stockholders, Thomas H. Gough, Sr., and E. C. West, Gough taking 300 shares and West 125 shares. It is these two sales which the plaintiffs desire to have set aside and the stock ordered to be transferred "to the said plaintiffs in the proportions fixed by the By-laws . . ."

The learned chancellor found "12. None of the shareholders ever objected to any of these transfers, sales or assignments of stock at the time they were made, and there was never any objection to any sale or assignment until the transaction in the last recited finding of fact referred to, and the objection to it was not made until February 1, 1944, almost a year later. Objections then made gave rise to this litigation."

The evidence, we think, supports the learned chancellor's findings and conclusions to the effect that the stockholders who are now complaining had no equity that would support the decree prayed for.

In each appeal the decree is affirmed at appellant's costs.