## In re Associated Wholesalers, Inc.

*T. Roberts Appel, 2d*, and *Eugene Shelley*, for petitioner.

*Roger S. Reist* and *Norman R. Olewiler*, for respondents.

ATKINS, P. J., August 19, 1963.—The facts in this controversy have been stipulated by counsel for the respective parties. Insofar as material for the determination of the questions to be determined, they may be summarized as follows: On December 17, 1917, the Lancaster Wholesale Grocery Company, hereinafter called "Lancaster" was incorporated. Its bylaws contained the following provisions:

Article IV—Shareholders

Section 1. "Any person, firm, partnership or corporation, while engaged in the retail grocery business,

shall be eligible to membership in this Company and may be elected thereto by the Board of Directors, provided that such proposed member shall, first, furnish satisfactory references as to personal character, and business integrity, and, second, purchase and become the holder and owner of shares of the capital stock of this Company the aggregate par value of which shall not be less than five times the amount of the average weekly purchase of goods by such member; no member, however, shall hold less than two shares; and such membership shall at all times thereafter be contingent upon the fulfillment of the foregoing provisions respecting integrity and stockholdings, and in default thereof, may be cancelled by action of the Board of Directors."

Section 2. "The company, through its Board of Directors, reserves unto itself the exclusive right to recall all stock certificates and revoke all privileges of any shareholder who is found ineligible for any cause whatsoever, such stock certificates to be paid for within sixty (60) days of cancellation at par value on the date of cancellation."

Article VIII—Certificates of Stock.

Section 4. "Any shareholder who wishes to dispose of his or her stock in the Company shall first give the Company the option to purchase the same at the par value thereof. If the Company, and/or its nominee fails to exercise its option to purchase within ninety days after written notice thereof, then said shareholder's right to dispose of the said stock shall be unlimited. Should the Board of Directors of this Company at any time declare a shareholder to have violated any of the By-Laws or Regulations of this Company, which action of the Board of Directors shall be final, determinative of the fact and binding on the shareholder, this Company shall thereupon have the right to buy all his or her stock at the par value

thereof, provided this right be exercised within ninety days of the aforementioned action of the Board of Directors. Should any shareholder die or cease to be engaged in the grocery business, this Company and/or its nominee shall have the right to buy all stock of this Company owned by such shareholder or his estate for the par value thereof, provided such right be exercised within ninety days from the time this Company is advised in writing of these facts. No shareholder shall have the right to sell, assign, transfer, deliver or pledge any of the stock of this Company to anyone other than this Company and/or its nominee without first giving to this Company the option to buy such stock for the par value thereof within ninety days of the receipt of notice from the shareholder."

J. Elwood and Daisy E. Johnson jointly own 45 shares of common stock of Lancaster, and Minerva Johnson owned 213 shares of common stock of Lancaster. J. Elwood and Daisy Johnson were at all times and still are engaged in the retail grocery business, while Minerva has not been so engaged, having retired from business in July of 1960.

Beginning some time prior to November 1961, discussions were had by responsible officials of Lancaster and Yorktowne Wholesale Grocery Company, hereinafter called "Yorktowne," which ultimately on June 25, 1962, resulted in an agreement by the boards of directors of the two corporations to consolidate the corporations. On June 25th, Lancaster adopted a resolution to purchase the stock of all shareholders who were "ineligible" by reason of their being no longer engaged in the retail grocery business. The consideration for this purchase was to be either in cash for the par value of the stock, or debentures payable in five years with 5 percent interest for the book value of the shares, at the option of the shareholders.

On June 27, 1962, Lancaster deposited $40,000 in

escrow with Fulton National Bank of Lancaster to pay for the shares to be purchased. This action was pursuant to article IV of the by-laws. On the same day notice was given to Minerva Johnson and all other shareholders of Lancaster who were no longer actively engaged in the retail wholesale grocery business of the action of the company.

On June 28, 1962, a new list of shareholders of Lancaster was prepared eliminating all former shareholders who were no longer engaged in the retail grocery business. A meeting of the shareholders as determined by the new list was called to vote on the plan of the proposed consolidation of Lancaster and Yorktowne to be held on July 1, 1962. At this meeting, written objection to the plan of consolidation was filed by both J. Elwood and Daisy Johnson, and by Minerva Johnson. The shares of J. Elwood and Daisy Johnson were voted against the plan, and an attempt was made to vote Minerva's shares against the plan, but this was refused on the ground that she was no longer a shareholder of Lancaster.

On July 25, 1962, written demand was made on Lancaster by J. Elwood and Daisy Johnson and Minerva Johnson that they be paid the fair value for their shares of stock.

On July 31, 1962, the merger of Lancaster and Yorktowne was approved by the Department of State of the Commonwealth of Pennsylvania, the new corporation being known as Associated Wholesalers, Inc., the petitioner herein.

On August 29, 1962, J. Elwood Johnson and Minerva Johnson, by their attorney Roger S. Reist, Esq., delivered their stock certificates to T. Roberts Appel, 2d, Esq., attorney for Associated under cover of the following letter:

"Dear Mr. Appel:

"Pursuant to your recent request for certificates

presently held by the dissenting shareholders of The Lancaster Wholesale Grocery Company who have made demand of payment for the fair market value of their respective shares, enclosed herewith please find said shares hereinafter identified on page 2. Your client may endorse these shares, if it feels it is necessary.

"In our opinion as counsel, the statutory language which prompted your request is fully without purpose in the type of situation herein present where transfer rights of such stock are specifically restricted by the By-Laws of the company; particularly so where these restrictions are imprinted upon the face of each certificate. In addition it was our interpretation of the statute that the notation on the certificate was not required until after the value had been established and demand for its payment made.

"Nevertheless, in view of your request regarding these shares, we are forwarding them to you as counsel but not for the purpose of surrendering the said shares to the company.

"Yours very truly,
/s/ Roger S. Reist"

On August 30, 1962, T. Roberts Appel, 2d, Esq., by letter, informed Roger S. Reist, Esq., as follows:

". . . Receipt is acknowledged of your letter of August 29, 1962 and the enclosed stock certificates. No request was made by me for these certificates. However, if your clients desire that the certificates be endorsed, the Company will be pleased to endorse those standing in the names of Nelson F. and Myrtle L. May, William R. or Ruth N. Johnson and Harold Shulman and Anna Rae Shulman, upon their, or your, request to do so. I will hold the stock certificates in my office pending receipt of your instructions.

"You will find enclosed three Affidavits of Mailing concerning your clients. You will note that the Com-

pany, pursuant to Section 515(i) of the Pennsylvania Business Corporation Law, has elected to treat J. Elwood and Daisy E. Johnson as shareholders. They have continued to buy from the Company and the Company feels that they will be beneficial to it.

"You will further note that the Company continues to take the position that Minerva M. Johnson's recourse is against the escrow fund on deposit in the name of the Company with The Fulton National Bank of Lancaster . . ."

Also on August 30, Mr. Appel wrote to J. Elwood and Daisy Johnson advising them that the company had elected to treat them as shareholders. A letter was sent by Mr. Appel the same day to Minerva Johnson, advising her she was no longer considered a shareholder and that her "recourse is to the escrow fund standing in the company's name with The Fulton National Bank of Lancaster."

J. Elwood and Daisy Johnson made purchases from Lancaster's warehouse in August 1962, the last being August 27, 1962.

The surviving corporation presented its petition to this court with a prayer for the appointment of appraisers to determine the fair value of the stock of Lancaster, and to determine which of the dissenting shareholders enumerated therein are entitled to enjoy that status. The company agrees that all shareholders except J. Elwood and Daisy Johnson and Minerva Johnson named in the petition are entitled to be recognized as having the rights of dissenting shareholders. It is contended that Minerva Johnson lost her status as a shareholder by the action of Lancaster on June 25, 1962. It is argued that J. Elwood and Daisy Johnson failed to comply with the statutory procedure to protect their rights as dissenting shareholders, and therefore they continue as shareholders.

We shall consider Minerva Johnson's petition first. As we understand her argument, she contends the company is estopped to assert its rights under article IV of Lancaster's bylaws. She argues also that she is a victim of discrimination.

A corporation may lose the right to enforce a bylaw by persistently ignoring it: Elliot v. Lindquist, 356 Pa. 385. In that case the bylaws of a corporation contained a requirement any shareholder desiring to sell stock must give notice to the board of directors, and the minority shareholders were then to be given the right to bid on that stock. It was shown that this bylaw had never been enforced from the inception of the corporation in 1917 to the date of the suit in 1945. Not only had the corporation not enforced the bylaw, but the individual plaintiffs, who were shareholders, had previously participated in sales of stock without complying with the bylaw.

The evidence in this case simply shows that Minerva Johnson retired from the grocery business in July 1960, and that nearly two years later on June 27, 1962, her stock was recalled, and under the right given to the company acting through the board of directors pursuant to article IV, sec. 2 of its bylaws, the option to enforce the bylaws, according to the language of the bylaw, was Lancaster's. It was not a mandatory requirement that the shareholder withdraw on ceasing to be engaged in the retail grocery business. Consequently the failure to require the withdrawal could not be construed as a waiver of any requirement. There is no showing that Minerva Johnson did anything in reliance on a waiver of this bylaw by Lancaster.

As previously indicated, Minerva Johnson contends she has been discriminated against, but it is not quite clear wherein she claims discrimination. If it is with reference to other shareholders who were no longer ·

engaged in the retail grocery business, there can be no discrimination, because according to the record the shares of all such shareholders were called at the same time. If she is being discriminated against with reference to the other shareholders who still are engaged in the retail grocery business, she is certainly in an entirely different category from them, and we fail to see how the company's conduct can be considered as discriminatory. We therefore conclude that Minerva Johnson is not entitled to the status of a dissenting shareholder.

With regard to J. Elwood and Daisy Johnson, there is a different problem. Section 515 of the Business Corporation Law, the Act of May 5, 1933, P. L. 364, as added by the Act of 1957, P. L. 711, and amended by the Act of 1959, P. L. 1406, sets forth the procedures to be followed by a dissenting shareholder in order to assert his rights in case of a merger or consolidation of the corporation in which he is a shareholder with another corporation. By this section there are now four steps necessary to be followed by the dissenting shareholder in case of a merger or consolidation. These are:

1. Prior to commencement of voting on the plan of merger or consolidation the dissenting shareholder must file a written objection to the plan.

2. He shall not vote in favor of the plan.

3. Within 20 days after the vote approving the plan, he must make written demand for the payment of the fair value of his shares.

4. Within 20 days after demanding payment for his shares, he must submit the certificate or certificates for the shares to the corporation for notation thereon that such demand has been made.

As we understand the company's position, there is no dispute J. Elwood and Daisy Johnson complied with the first three steps. The argument involves the fourth.

Subsection (i) of section 515, supra, provides insofar as here material: "Within twenty days after demanding payment for his shares, each shareholder demanding payment shall submit the certificate or certificates representing his shares to the corporation for notation thereon that such demand has been made. His failure to do so shall at the option of the corporation terminate his rights under this section unless a court of competent jurisdiction for good and sufficient cause shall otherwise direct. . ."

These people demanded payment for the fair value of their shares on July 25, 1962. They were therefore required to deposit their shares for notation of the demand thereon on or before August 14, 1962. This was not done until August 29, 1962, 15 days later. The company has elected to terminate their rights as dissenting shareholders. By the terms of the act, the election of the corporation is conclusive unless the court for cause shown directs otherwise.

We have found no case, nor has counsel directed us to any, that construes this subsection. We believe that the legislature intends that the dissenting shareholder must show some legal or equitable reason that would make it unjust or unfair to deprive him of his status as a dissenting shareholder as a penalty for failure to comply with this requirement, when he has, as here, been in full compliance with all of the other requirements of section 515. Unfortunately for these shareholders there is no evidence at all in this record to show why the certificate or certificates for their shares were not submitted to the corporation on or prior to August 14, 1962. On the other hand, they continued to make purchases from Lancaster's warehouse on at least five occasions after giving notice they were desirous of being paid for their shares. This conduct is consistent with that of continuing as a shareholder rather than that of a dissenter, and could be

construed by the corporation as an indication they now no longer desire to dissent. In our opinion no cause has been shown to set aside the exercise of the corporation's option to terminate their status as dissenting shareholders.

Pursuant to this petition the court did appoint appraisers to fix the fair value of the shares of Lancaster. These appraisers have filed a report, but the time has not expired since the filing of the report during which we indicated we would allow exceptions to be filed if the parties desired to except. Consequently in this opinion we make no determination of the value of the shares. This will follow after it is determined whether exceptions will be filed to the report of the appraisers.

For the reasons hereinabove stated, we enter the following

*Decree*

And now, to wit, August 19, 1963, at 10 a.m. (EDST), it is ordered, adjudged and decreed that J. Elwood and Daisy E. Johnson and Minerva Johnson are not entitled to the status of dissenting shareholders in this proceeding; that William R. or Ruth N. Johnson, Nelson F. May and Myrtle L. May, Harold Shulman and Anna Rae Shulman are entitled to the status of dissenting shareholders and are entitled to have the fair value of their shares of stock in Lancaster Wholesale Grocery Company determined.

An exception is granted to all parties in interest to the action of the court in this regard.