**HUMBLE OIL & REFINING COMPANY et al., Petitioners,**

v.

**WESTSIDE INVESTMENT CORPORA-TION, Respondent.**

No. B–572.

Supreme Court of Texas.

May 1, 1968.

Rehearing Denied May 1, 1968.

Frank L. Heard, Jr., Houston, Lager-quist, Shaw & Davis, San Antonio, for petitioners.

Pat Legan Johnson & Christopher, San Antonio, for respondent.

SMITH, Justice.

Petitioner, Humble Oil & Refining Company,[1] filed this suit on February 10, 1965, against Westside Investment Corporation[2] seeking a judgment commanding specific performance based on a written option and contract for the sale of real estate. Petitioner, Marvin H. Mann,[3] a realtor, as a third-party plaintiff, filed a plea in intervention, seeking a judgment for $1260.00 against Westside as brokerage charges in connection with the transaction. Westside, Humble and Mann each filed a motion for

1. Humble Oil & Refining Company, Petitioner, herein referred to as Humble.

2. Westside Investment Corporation, Respondent, herein referred to as Westside.

3. Marvin H. Mann, Petitioner, herein referred to as Mann.

summary judgment. The court granted Westside's motion and overruled the motions of Humble and Mann. The court of civil appeals affirmed. 419 S.W.2d 448. We reverse the judgments of the courts below. We hold that Humble is entitled to specific performance of the option contract and render judgment for Humble. We hold that a material issue of fact exists as to whether Mann is entitled to a brokerage commission and remand that portion of the case to the district court for trial.

The facts, most of which are either stipulated or established by affidavits, are these:

On April 5, 1963, Westside as seller and Humble as buyer agreed and entered into a written contract whereby Westside gave and granted to Humble an exclusive and irrevocable option to purchase for a consideration of $35,000.00 a tract of land situated outside of the city limits of San Antonio, Bexar County, Texas, being all of lots 19, 20, 21, 22 and 23 of Block 2, Lackland Heights Subdivision.

The option contract was supported by a consideration. The contract provided that Humble might exercise the option by giving notice at any time prior to 9:00 p. m. on the 4th day of June, 1963, and by paying to Westside at the time of such notice or within ten (10) days following such notice the sum of $1750.00 as earnest money. This sum of money, together with the sum of Fifty Dollars ($50.00) as consideration paid at the time of the execution of the option contract, made a total of $1800.00 paid by Humble, leaving a balance of $33,-200.00 yet to be paid as purchase money in accordance with the option contract.

On May 14, 1963, within the time period provided for in the option contract, Humble paid the above mentioned sum of $1750.00 to the designated escrow agent, Commercial Abstract & Title Company.

Westside admits in its pleadings that it entered into the option contract with Humble, but contends that the option agreement was "rejected, repudiated, and terminated by Humble." Westside contends that summary judgment proof of rejection of the option contract is contained in letters written by Humble to Westside on May 2, 1963, and May 14, 1963. The pertinent portion of the May 2nd letter reads:

"Humble Oil & Refining Company hereby exercises its option to purchase Lots 19, 20, 21, 22 and 23, Block 2, Lackland Heights Subdivision, in or near the City of San Antonio, Bexar County, Texas, granted in Option and Purchase Contract dated April 5, 1963. As additional inducement for Humble to exercise its option to purchase, you have agreed that all utilities (gas, water, sewer and electricity) will be extended to the property prior to the closing of the transaction. The contract of sale is hereby amended to provide that Seller shall extend all utility lines to the property before the date of closing.

"Please sign and return one copy of this letter in the space indicated below to signify your agreement to the amendment to the purchase contract."

The May 14th communication provided, in part, as follows:

"Humble * * * hereby notifies you of its intention to exercise the option granted in option and purchase contract dated April 5, 1963, covering Lots 19, 20, 21, 22 and 23, Block 2, Lackland Heights Subdivision in or near the City of San Antonio, Bexar County, Texas. *The exercise of said option is not qualified and you may disregard the proposed amendment to the contract suggested in letter of May 2, 1963. * * *"* (Emphasis added.)

We conclude from this record that the parties are in agreement that Humble's letter of May 14, 1963, and the payment of earnest money within 10 days thereof was in law a timely exercise of the option to purchase *unless* Humble's letter of May 2, 1963, terminated and rendered unenforce-

**94**

able the option contract. The narrow question to be determined is whether or not the letter of May 2, 1963, constitutes a rejection of the option contract. If it does, the trial court properly granted Westside's motion for summary judgment and the court of civil appeals correctly affirmed such judgment.

Westside contends that Humble's letter of May 2nd was a conditional acceptance which amounted in law to a rejection of the option contract. Westside argues that the letter of May 2nd "clearly evidences Humble's intent to accept the offer *only if* Westside would agree to an amendment to the terms of its original offer." (Emphasis added.) It further argues that Humble's letter of May 14, 1963, reflects that Humble itself understood that its letter of May 2, 1963, contained a qualified acceptance, and did not form a contract. The basis for this conclusion is the sentence in the May 14 letter which reads: "The exercise of said option is not qualified and you may disregard the proposed amendment to the contract suggested in letter dated May 2, 1963, from the undersigned. * * *" We cannot agree with Westside's contentions.

The mere fact that the parties may choose to negotiate before accepting an option does not mean that the option contract is repudiated. As stated in James on Option Contracts § 838:

"It is laid down in the law of offers that a qualified or conditional acceptance is a rejection of the offer. It is clearly established by the decisions that a qualified or conditional acceptance of an offer does not raise a contract because the minds of the parties do not meet in agreement upon the same terms. It is said that such an acceptance is a counter-proposal for a new contract, to give legal life to which requires the assent or acceptance of the other party. It is in this sense that a qualified or conditional acceptance is a rejection of the offer first made because the original negotiations are dropped and negotiations for a new and different contract begun.

"An option is a contract, the negotiations for the making of which are concluded by the execution and delivery of the option. The minds of the parties have met in agreement, the distinctive feature of which is that the optionor, for a consideration, binds himself to keep the option open for election by the optionee, for and during the time stipulated, or implied by law.

"Under an option, the act necessary to raise a binding promise to sell, is not, therefore, an acceptance of the offer, but rather the performance of the condition of the option contract. If this is true, then the rule peculiar to offers to the effect that a conditional acceptance is, in itself, in every case, a rejection of the offer, is not applicable to an option contract, supported by a consideration and fixing a time limit for election."

The case of Cerbo v. Carabello, 376 Pa. 571, 103 A.2d 908 (1954), is to the same effect. It involved an option contract supported by a consideration wherein a lessor granted a lessee an option to purchase real estate for $11,500.00 during a stated term. Before the expiration of the term, the lessee sought unsuccessfully to obtain a reduction of the proposed sale price to $11,000.00; however, prior to the expiration date, the lessee exercised the option. The Court, in overruling lessor's contention that the negotiations instituted by lessee resulted in a termination of the option, said:

"It is true that parties to a written contract may abandon, modify or change it by words or conduct, Elliott v. Linquist, 356 Pa. 385, 388, 52 A.2d 180, 169 A.L.R. 1369. But the difficulty with defendants' position is that neither the words nor conduct establish an intention to rescind or abandon the rights under the option. * * * At most it was a non-acceptance of an offer to enter into a new contract on the same terms except for a reduction in price. * * * No-

where does it appear that the lessee waived his rights under the option to purchase." Supra at 909.

■ We hold that Humble's letter of May 2, 1963, did not terminate the option contract. Humble, for a valuable consideration, purchased the right to keep the option contract open for the time specified, and the right to create a contract of purchase. Although Humble did have the right to *accept* or *reject* the option in the sense that it was free to take the action required to close the transaction, Humble was not foreclosed from negotiating relative to the contract of sale as distinguished from the option. The option, considered as an independent completed agreement, gave the optionee the right to purchase the property within the time specified. The option contract bound Humble to do nothing but granted it the right to accept or reject the option in accordance with its terms within the time and in the manner specified in the option. Westside was bound to keep the option open and could not act in derogation of the terms of the option. By the letter of May 2, 1963, Humble did not surrender or reject the option. The option to purchase was still a binding obligation between the parties when Humble exercised it on May 14, 1963. See Best Building Co. v. Sikes, 394 S.W.2d 57 (Tex.Civ.App.—1965, writ ref'd n. r. e.); Harper v. Runner, 85 Neb. 343, 123 N.W. 313 (1909); McCormick v. Stephany, 61 N.J.Eq. 208, 48 A. 25 (1900); Cerbo v. Carabello, 376 Pa. 571, 103 A.2d 908 (1954); James on Option Contracts § 838; 8A Thompson on Real Property § 4446; 1 Corbin on Contracts § 91; 1A Corbin on Contracts § 264.

Our holding falls within the rule stated in 1 Corbin on Contracts § 91. According to Corbin:

"If the original offer is an irrevocable offer, creating in the offeree a 'binding option,' the rule that a counter offer terminates the power of acceptance does not apply. Even if it is reasonable to hold that it terminates a revocable power, it should not be held to terminate rights and powers created by a contract. A 'binding option' is such a contract (usually unilateral); and an offer in writing, that allows a time for acceptance (either definite or reasonable) and that is irrevocable by virtue of a statute, is itself a unilateral contract. A counter offer by such an offeree, or other negotiation not resulting in a contract, does not terminate the power of acceptance."

Westside relies upon such cases as Beaumont v. Prieto, 249 U.S. 554, 39 S.Ct. 383, 63 L.Ed. 770 (1919); State v. Clevenger, 384 S.W.2d 207 (Tex.Civ.App.—1964, writ ref'd n. r. e.); Liquids Dispatch Line v. Texas Power & Light Co., 6 S.W.2d 169 (Tex.Civ.App.—1928, writ ref'd); and Seeburg v. El Royale Corporation, 54 Cal.App. 2d 1, 128 P.2d 362 (1942). These cases are distinguishable in that they are factually different. They either show a mere offer, no stated term for the option to remain open, or no consideration for the option.

■ On the basis of the undisputed facts herein discussed, we hold that Humble's motion for summary judgment praying for specific performance of the contract should have been granted. We turn now to a consideration of Mann's motion for summary judgment. The option contract contains a provision whereby Westside agreed to pay all brokerage fees in connection with the transaction and to indemnify and save Humble harmless against any and all claims for such charges. Clarence Jones Realty was designated as the broker and not Mann. Westside agreed to pay Clarence Jones Realty a 6% commission of the gross sales price when and if the sale should be finally completed. Clarence Jones Realty is not a party to this suit. Mann alleged in his petition and in his affidavit in support of his motion for summary judgment that he was the procuring cause of the execution of the contract; he was a licensed real estate salesman; he was associated with Clarence Jones Realty and participated in the negotiations leading to the execution of the op-

tion contract between Westside and Humble; he was no longer associated with Clarence Jones Realty, however, he had, at all time an agreement with Jones that he was to receive and was entitled to "60% of the real estate agent's commission provided for in the contract of April 5, 1963." Although Westside does not deny these facts, the summary judgment proofs on Mann's claim for commissions do not establish that he is entitled to a summary judgment. Westside has agreed to pay only 6% commission of the gross sales price. Since Clarence Jones Realty is not a party to this suit, we cannot hold in this Court that an issue of fact does not exist relative to Mann's entitlement to 60% of the real estate commission.

The parties have stipulated that Ray Ellison and Boyce Gaskin are the successors in interest to all rights of Westside Investment Corporation and are subject to the duties and obligations of Westside under the contract here involved. Therefore, for all of the reasons herein stated, we enter the following judgment:

(1) The cause of action between Humble and Westside is severed from the cause of action between Mann and Westside. The judgments of the trial court and the court of civil appeals as to Westside and Humble are reversed and judgment is here rendered that Westside and its successors specifically perform the contract of sale and that Westside and its successors properly execute and deliver to Humble a general warranty deed conveying the land involved to Humble and, further that Westside and its successors deliver to Humble an owner's policy of insurance for the sum of $35,000.00 as provided in the contract, such delivery to be made contemporaneously with the payment of $33,200.00, the balance of the purchase money provided for in the contract of sale.

(2) We reverse the judgments of the trial court and the court of civil appeals in favor of Westside against Mann and remand the cause of action between Mann

and Westside to the district court for a new trial.

(3) All costs are adjudged against Westside Investment Corporation and its successors.