# Management Recruiters of Lehigh Valley, Inc., v. Thorpe Weaving, Inc.

*Paul C. Hensel*, for plaintiff.
*Murray Mackson*, of *Mackson, Hauff, Hettinger & Thompson*, for defendant.

HEIMBACH, *P. J.*, February 20, 1974—Plaintiff is an employment agency. In a telephone call on March 16, 1972, between plaintiff's president and a representative of defendant, plaintiff agreed to send one Leslie Szukics, a fabric designer, to defendant's place of business for an interview and possible employment. On the same date, following the telephone call, plaintiff mailed to defendant the following document, which defendant admits receiving:

"MANAGEMENT RECRUITERS
   of Lehigh Valley, Inc.

"The Matchmakers
      40 West Broad St., Bethlehem, Pennsylvania
         18018—Area 215—865-2624
            Offices in Principal Cities

FEE SCHEDULE

"Management Recruiters of Lehigh Valley, Inc. is licensed by, bonded to, and operates under the laws of the Commonwealth of Pennsylvania, Department of Labor and Industry, Harrisburg, Pennsylvania.

"PLACEMENT FEES FOR POSITIONS WITH TOTAL FIRST YEAR'S EARNINGS AS FOLLOWS:

|              | to $  4,999.99 | 8%  |
| $  5,000.00  | to $  5,999.99 | 9%  |
| $  6,000.00  | to $  9,999.99 | 10% |
| $10,000.00   | to $12,999.99  | 12% |
| $13,000.00   | to $15,999.99  | 15% |
| $16,000.00   | to $16,999.99  | 16% |
| $17,000.00   | to $17,999.99  | 17% |
| $18,000.00   | to $18,999.99  | 18% |
| $19,000.00   | to $19,999.99  | 19% |
| $20,000.00   | to $20,999.99  | 20% |
| $21,000.00   | to $21,999.99  | 21% |
| $22,000.00   | to $22,999.99  | 22% |
| $23,000.00   | to $23,999.99  | 23% |
| $24,000.00   | to $24,999.99  | 24% |
| $25,000.00   | upwards yearly | 25% |

"For positions paying commissions, or other incentives, with or without salary, MANAGEMENT RECRUITERS OF LEHIGH VALLEY, INC. reserves the right to include a reasonable estimate of such compensation, such estimate to be based upon an average income for the first year. This estimate is not subject to reduction or increase thereafter.

"BILLING: Fees shall be invoiced at or about the time applicant begins work.

"REFUND PROVISION: If our invoice is paid within 7 days after applicant begins work or within 7 days from date of invoice, whichever is later, Management Recruiters of Lehigh Valley, Inc. will grant a 100% fee refund should the

applicant's employment be terminated for any reason whatsoever within 30 calendar days from initial date applicant commences working."

Szukics, subsequent to the telephone call and receipt of the fee schedule, was interviewed and hired by defendant to begin work on April 3, 1972, at an annual salary of $10,400.

On March 31, 1972, after Szukics had been interviewed and hired, plaintiff mailed, and defendant received, the following invoice from plaintiff:

"MANAGEMENT RECRUITERS
    of Lehigh Valley, Inc.
The Matchmakers
      40 West Broad St., Bethlehem, Pennsylvania
        18018—Area 215—865-2624
      OFFICES IN PRINCIPAL CITIES

Mr. Mike Dubin
Zaleschitz Mills Inc.
South Street           Date   March 31, 1972
Jim Thorpe, Pa. 18229        Invoice No. 335

| Employer | Employee | Starting Date | 1st Yr. Compensation |
|---|---|---|---|
| Zaleschitz Mills | Leslie Szukics | 4/3/72 | $10,400.00 |

| Position | Placement Mgr. |
|---|---|
| Fabric Design | B. Kinter |

For services rendered           FEE $1248.00
Terms: Net Due Upon Receipt

If this invoice is paid by April 10, 1972, Management Recruiters of Lehigh Valley, Inc. will refund 100% of any fee paid us or replace the applicant free of charge should employee leave or be terminated for any reason whatsoever prior to May 3, 1972.

    ALL FEES PAID TO US ARE TAX DEDUCTIBLE"

On April 28, 1972, defendant terminated Szukics' employment.

Plaintiff seeks to recover from defendant $1248., being 12 percent of the annual salary of $10,400. provided for in the fee schedule, alleging that defendant failed to remit such fee within seven days after applicant began work or within seven days from date of invoice, in accordance with the refund provision of the agreement. Plaintiff, in its complaint, inter alia, alleges the receipt by defendant of a confirming letter following the telephone call. Defendant, in general terms, denies this allegation. Plaintiff likewise, inter alia, alleged that defendant, in the telephone conversation, agreed to be responsible for plaintiff's fee in the event Szukics was hired. Defendant likewise, in general terms, denies this allegation.

Defendant admits receipt of the fee schedule and invoice, but avers the terms of the fee schedule differ materially from that of the invoice, which it says relieves it from any liability in the premises.

Whether defendant received a letter of confirmation following the telephone call, or whether defendant agreed in the telephone conversation to be responsible for plaintiff's fee in the event it hired Szukics, we hold to be immaterial. Absent an allegation by defendant of fraud, accident or mistake, the fee schedule, having been received by the defendant following the telephone conversation and prior to interviewing and hiring Szukics, delineates the agreement entered into between the parties: Restatement, Contracts, §521, and is the only evidence of their agreement: Gianni v. R. Russell & Co., Inc., 281 Pa. 320, wherein the rule was quoted as follows:

"'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best,

but the only, evidence of their agreement. . . . All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract. . . . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' "

For this reason we treat defendant's general denials as admissions under Pa. R.C.P. 1029(b) and refuse defendant's request for allowance to amend.

The issue thus presented is whether defendant is bound by the provisions of the fee schedule, or whether it is relieved from liability by reason of the changes made in the later invoice provisions.

Under the fee schedule refund provisions, since Szukics' employment was terminated within 30 calendar days from the initial date he commenced working, defendant would have been entitled to receive a 100 percent refund of the fee paid, as provided in the fee schedule, if such fee had been paid within seven days after Szukics began work or within seven days from the date of invoice, whichever is later. Defendant is in default of this provision. Whether or not the measure of damages for defendant's default is the full amount of the fee as provided in the fee schedule need not be decided in view of our conclusion as hereinafter stated.

The invoice received by defendant after Szukics had been interviewed and hired provided plaintiff could either refund the fee paid or replace the employee free of charge should the employment terminate prior to May 3, 1972.

This option obviously materially changes the agreement entered into by the parties. Defendant had the right to have refunded to it the entire fee

paid if employment of Szukics was terminated within the prescribed time. Defendant had not agreed to give plaintiff the option of retaining the fee paid by substituting another prospective employee. Had defendant paid the fee following receipt of the invoice, such act may well have been construed as an acceptance of the changed provisions in the invoice.

Parties to a written contract may abandon, modify or change it by words or by conduct: Weldon & Kelly Co. v. Pavia Co., 354 Pa. 75, 79. But any cancellation, modification or alteration can be accomplished only by the mutual understanding or agreement of both parties: Briggs et al., v. Logan Iron & Steel Co., 276 Pa. 326, 329; 17A C.J.S., §375, where it is stated:

"Modification must be made by the contracting parties . . . and one party to a contract cannot alter its terms without the assent of the others; . . . . Assent may be implied from acts. . . . However, no one receiving a proposal to change an agreement, to which he is a party, is obliged to answer the proposal, and his silence cannot be construed as an acceptance if nothing else is shown."

The court in Elliott et al. v. Lindquist et al., 356 Pa. 385, at 388, approved the following statement of the lower court:

". . . the by-laws 'constitute the contract between the stockholders and are subject to the rules governing a written contract signed by all the parties. It follows that contracting parties cannot ignore their own contractual covenants with impunity and still seek to hold the others to the contract.'"

See Lee v. Campbell, 58 Lanc. 161.

The same principle of law applies in the instant case. Plaintiff, by its unilateral modification of the

agreement, has forfeited its right to recover under the provisions of the fee schedule.

A court properly enters judgment on a motion for judgment on the pleadings where there is no dispute of fact and the rights of the parties are dependent solely upon a clear, unambiguous written contract: Waldman v. Shoemaker, 367 Pa. 587 (1951). Likewise defendant is entitled to such judgment on motion of plaintiff where plaintiff's complaint states no cause of action: Boron v. Smith, 380 Pa. 98, 110 A. 2d 169.

Wherefore we enter the following

## ORDER

Now, February 20, 1974, plaintiff's motion for judgment under Pa. R.C.P. 1034 is denied. Since there is no genuine issue of fact to be determined by a jury, judgment is entered for Thorpe Weaving, Inc., defendant, and against plaintiff, Management Recruiters of Lehigh Valley, Inc.

Costs on plaintiff.