## Golasa v. Struse

*Howard Davidson*, for plaintiff.
*Robert J. Donohue*, for defendants.

KALISH, *J.*, December 4, 1978—Plaintiff Carl Golasa (hereinafter referred to as Golasa) brought this action against defendants Aztec Wire & Cable, Inc. (hereinafter referred to as Aztec), Edward G. Struse (hereinafter referred to as Struse), and Jay Lewis Powell (hereinafter referred to as Powell), both shareholders and officers of Aztec, in an attempt to be restored to his positions as shareholder, director and president of Aztec. Defendants were enjoined from acting against plaintiff until the case was decided on its merits when Judge Gelfand granted plaintiff's request for a preliminary injunction on August 25, 1978.

Plaintiff has alleged that defendants wrongfully stripped him of his positions as president, director and holder of one-third of the voting stock of Aztec. Defendants have countered that they followed established corporate procedures in removing plaintiff from his various positions due to his failure to pay for his shares.

## I. FINDINGS OF FACT

1. Defendant Aztec is a corporation duly organized and existing since June 10, 1977, under the laws of the Commonwealth of Pennsylvania.

2. The incorporators of the corporation were defendant Edward G. Struse and plaintiff Carl J. Golasa.

3. Plaintiff Golasa and defendant Struse on June 10, 1977, entered into a written agreement, in lieu of the first meeting of shareholders of the corporation, adopting bylaws of the corporation and designating both of them as directors of the corporation.

4. Plaintiff Golasa and defendant Struse on June 10, 1977, entered into a written agreement, in lieu of the first meeting of the board of directors, appointing Golasa to the office of president and treasurer and appointing Struse to the office of vice-president and secretary.

5. The written agreement of the board of directors dated June 10, 1977, authorized the issuance of 50 shares of voting stock to both plaintiff Golasa and defendant Struse for the payment by each of them of $50 and the issuance of one nonvoting share to defendant Jay Lewis Powell.

6. The written agreement of June 10, 1977, of the board of directors appointed officers for a term of one year or until the successors were chosen.

7. On or about December 14, 1977, Aztec obtained a line of credit with the Girard Bank in the amount of $100,000 after plaintiff Golasa, defendant Struse and defendant Powell each individually executed an unlimited surety to the benefit of Girard Bank in the amount of $100,000.

8. On April 27, 1978, Aztec held its annual meeting of shareholders and board of directors.

9. At this annual meeting of shareholders, defendant Powell surrendered his one share of nonvoting stock and purchased 50 shares of voting stock for $50 to have one-third control of Aztec. Defendant Powell was also elected as a third director of Aztec at that time.

10. Defendant Struse and plaintiff Golasa voted their shares of stock in the corporation, without having paid for said stock, during this annual shareholders' meeting of April 27, 1978.

11. The three directors agreed that all major corporate decisions of the board of directors would require a unanimous vote at the annual meeting of the board of directors of April 27, 1978.

12. On or about May 5, 1978, Struse drafted a $50 personal check payable to Aztec for his voting shares and placed the check in his office desk drawer. In July, 1978, he removed this check and deposited it in the corporate checking account.

13. The board of directors of Aztec did not issue a call for the payment of subscription to Golasa at any time prior to August 21, 1978.

14. Prior to August 21, 1978, Powell and Struse conferred with Robert Donohue, Esq. (hereinafter referred to as Donohue) for the purpose of divesting Golasa of his ownership share of Aztec and removing him from his position as president of Aztec.

15. At the meeting of August 21, 1978, Donohue stated to Golasa that he would not be allowed to vote at the meeting due to his nonpayment of the $50 to Aztec for his shares of stock.

16. Over the protest of Golasa, Struse and Powell held a new election for the board of directors, electing themselves and Diane Struse.

17. Over the protests of Golasa, the new directors on August 21, 1978, resolved to remove Golasa as president of the corporation and to elect Struse as president.

18. Since August 21, 1978, Golasa has been denied his share in ownership of Aztec and deprived of his positions as president and director of Aztec.

## II. DISCUSSION

The evidence is clear that plaintiff has been a stockholder from the time of formation of Aztec. He helped plan the corporation and served as one of the two incorporators. His promise to pay for his shares at the time of the corporate formation gave him the status of a subscriber: Business Corporation Law of May 5, 1933, P.L. 364, as amended, 15 P.S. §1002(21), (22); whose shares could not be divested until Aztec complied with the statutory procedure for forfeiture beginning with a call to pay for unpaid shares: 15 P.S. §1605.[1] See Grafton v. Masteller, 232 F. 2d 773 (3d Cir. 1956). Aztec made no attempt to comply with the statutory mandate.

Defendants' argument that plaintiff has never been a shareholder because he never paid for his shares is totally without merit. It is uncontroverted that no one paid for any voting shares until April, 1978, some 10 months after the formation of Aztec. At that time, defendant Powell paid for new voting stock. Struse, who was the only other original holder of voting stock in addition to plaintiff, did not pay, i.e., have Aztec cash his check, until July,

---

1. "When any shareholder fails to pay any call upon his shares properly made by the directors, at the time when such payment is due, the directors may proceed to collect the amount due in the same manner as any debt due the corporation, or they may sell, at public sale, such part of the shares of the delinquent shareholder as will pay all or any part of the installments then due from him. . . If no bidder can be had to pay the amount due on the shares or if the amount is not collected by an action at law brought within the county where such corporation has its registered office, *the shares shall be forfeited to the corporation . . .*" 15 P.S. §1605. (Emphasis supplied.)

1978, just one month before defendants told plaintiff that he was no longer a stockholder due to his failure to pay $50. Applying defendants' logic would mean that not only is plaintiff excluded as stockholder but also that Struse is excluded for his failure to pay. Without any voting shareholders paying until April, 1978, there could not have been any directors properly elected by the shareholders. Without a board of directors to manage the business of the corporation, there could not have been a functioning corporation. See 15 P.S. §1401.[2]

Defendants further contend that the provisions of article III, section 4[3] of the bylaws of Aztec requiring payment of shares prior to voting of the shares enable them to claim that they properly rejected plaintiff's attempt to vote at the August 21, 1978, meeting. The court will not permit this provision to be used to prevent plaintiff from voting. It is clear that corporate bylaws amount to a contract among the shareholders: Hornsby v. Lohmeyer, 364 Pa. 271, 72 A. 2d 294 (1950). Individual provisions of the bylaws may be waived by the conduct of parties just as provisions of a contract: Elliott v. Lindquist, 356 Pa. 385, 52 A. 2d 180 (1947). As already described, the evidence is manifest that a waiver took place. In particular, Struse cannot complain about the failure of plaintiff to pay when he himself did not pay for so long.[4]

2. "The business and affairs of every business corporation shall be managed by a board of directors. . . ." 15 P.S. §1401.

3. Article III, sec. 4 reads: "No shares shall be voted at any meeting in which shares are unpaid."

4. See Hall v. West Chester Publishing Company, 180 Pa. 561, 37 Atl. 106 (1897). There, the court said that the director of

As a shareholder in a corporation where the payment requirement was waived, plaintiff had the right to vote: 15 P.S. §1504. Defendants must give fair notice to plaintiff before their waiver can be revoked.

Since plaintiff was improperly denied the right to vote at the meeting of August 21, 1978, the votes taken at this shareholders' meeting are null and void. Specifically, the election for the board of directors of Aztec is invalidated.

Additionally, plaintiff argues correctly that he could not be removed as a corporate director because of the requirement of cumulative voting. Under this manner of voting, the voter having the number of votes equal to the number of officers to be chosen, is allowed to distribute his votes as he may see fit, including the concentration of all of his votes upon one person: Black's Law Dictionary, Cumulative Voting, 455 (Rev. 4th Ed. 1968). Cumulative voting is guaranteed in the election of directors in Pennsylvania unless the corporate articles otherwise provide: 15 P.S. §1505A. There are no contrary provisions in the bylaws of Aztec. Plaintiff could not properly be removed as a director since, in any subsequent election, he would be automatically re-elected by virtue of his ownership of one-third of the voting shares in a corporation where there were three directors.

Defendants counter than even if plaintiff is restored to his positions as stockholder and director,

---

a corporation cannot challenge the title of the other directors to their offices because of informalities in their election when he participated in all the proceedings and was himself elected in an informal manner.

they still have the authority by a simple, majority vote under the bylaws to remove plaintiff as president of Aztec. This court has determined, based on the evidence before it, that, in order for the directors to take such major corporate action, the bylaws required unanimous approval on the part of the board of directors. Such unanimity would be rather unlikely with plaintiff restored as a director.

Plaintiff was more persuasive and credible in showing the existence of this unanimity requirement. Although the requirement was never attached to the minute book or placed in the bylaws, the court was more than willing to examine parol evidence, based on the corporation's prior disregard of formalities. It is undisputed that corporate affairs were handled in a less than careful manner.[5] The testimony of Aztec's corporate counsel that a resolution of unanimity was adopted at the April, 1978, meeting was compelling as were his notes of that meeting. Furthermore, the court is persuaded that plaintiff, concerned over the possibility of defendants Powell and Struse, who were good friends, ganging up against him, would not have agreed to permit Powell to become a one-third owner of common stock without such protection.

As a final argument, defendants stress that even if there were a unanimity requirement, they still had the right without unanimity to remove plaintiff as president for misbehavior in order not to violate their fiduciary duties to the corporation and the

5. For example, there was testimony that the directors took major corporate actions without formal meetings. In addition, Powell, acknowledged by all parties to be both a director and officer, was never listed as such in the corporate record.

stockholders. Defendants have no such right. They must comply with the Pennsylvania Business Corporation Law. If they believe that plaintiff as director has committed fraudulent or dishonest acts or grossly abused his authority, they may petition the court to remove him: 15 P.S. §1405C. If they cannot prove such grounds but a deadlock among the directors exists, the remedy is not a sloppy coup d'etat as happened here. Rather, the shareholders must petition the court to appoint a receiver and dissolve the corporation: 15 P.S. §2107A.[6] This statute was designed to promote the orderly transaction of business in the corporate world and to prevent the type of incidents which occurred in this situation. Defendants cannot choose to accept the benefits incident to the corporate form and at the same time brush aside the corporation law when it works to their detriment.

## III.  CONCLUSIONS OF LAW

1.  This court has jurisdiction over the parties and subject matter.

2.  The votes taken at the shareholders' meeting and the board of directors' meeting on August 21, 1978, are null and void.

3.  Plaintiff is the lawful owner of 50 shares of Aztec voting stock.

---

6. "The several courts of common pleas of the Commonwealth may, upon petition filed by a shareholder of a business corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation, when it is made to appear: . . . . (4) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof." 15 P.S. §2107A.

4. Plaintiff is restored to his positions as director and president of Aztec.

## DECREE NISI

And now, December 4, 1978, upon consideration of the foregoing, it is hereby ordered, adjudged and decreed that:

1. The votes taken at the shareholders' meeting and the board of directors' meeting on August 21, 1978 are null and void.

2. Plaintiff is the lawful owner of 50 shares of Aztec voting stock.

3. Plaintiff is restored to his positions as director and president of Aztec.

The prothonotary is directed to enter this decree nisi and to notify the parties or their counsel. If no exceptions are filed within 20 days after entering this decree, a final decree upon praecipe will be entered.