**EXXON CORPORATION, Appellant,**

v.

**Harold A. POLLMAN, et al., Appellees.**

**No. 12–85–0052–CV.**

Court of Appeals of Texas,
Tyler.

May 29, 1986.

Rehearing Denied July 28, 1986.

Rene J. Mouledoux, Warren C. Dance, Exxon Co. U.S.A., Houston, for appellant.

M. Drew Siegel, Lawrence J. Friedman, Friedman & Ginsberg, Mark S. Werbner, Carrington, Doleman, Sloman & Blumenthal, Dallas, for appellees.

BILL BASS, Justice.

This is a suit for the specific performance of an option to purchase contained in a lease. The principal question is whether the option, which gave the lessee the right to purchase the leased premises "at any time during the term of [the] lease," could be exercised during the first five-year extension of the lease after the fifteen-year initial term had expired. We hold that the option provision was unambiguous and that the purchase option could be exercised at any time while the lease was in full force and effect. We reverse and render in part and reverse and remand in part.

Humble Oil & Refining Company, which is Exxon Corporation's predecessor in interest, leased a service station from David Witts and his wife on August 16, 1961.

The lease, which had a fifteen-year initial term that could be extended for four additional five-year terms, contained the following option to purchase in paragraph XIV:

> In consideration of this lease, Lessors hereby grant to Lessee the right at its option to purchase the leased premises free and clear of all liens and encumbrances at any time *during the term of this lease* for an agreed consideration of Seventy-Two Thousand and No/100 Dollars ($72,000.00). (Emphasis added.)

On July 14, 1966, the Witts sold the service station covered by the lease to Harold Pollman, Peter Fonberg and Harpet Investments, a partnership composed of Pollman and Fonberg, and assigned them the lease. Exxon extended the lease for the first five-year term in 1977, and on October 3, 1981, Exxon notified Pollman, Fonberg and Harpet Investments that it was exercising the purchase option. However, they refused to convey the property to Exxon, claiming that the option to purchase could only be exercised during the lease's fifteen-year initial term.

Exxon sued Pollman, Fonberg and Harpet Investments for the specific performance of the option to purchase, and Pollman, Fonberg and Harpet Investments asked for a declaratory judgment that the purchase option had expired because it could only be exercised during the fifteen-year initial term. The court denied Exxon's motion for an instructed verdict and submitted the case to the jury on special issues. Among other things, the jury found that (1) the original parties to the lease had intended that the purchase option could only be exercised during the initial fifteen-year term; (2) Exxon had waived the right to exercise the purchase option; and (3) Exxon was not entitled to recover any attorney's fees for bringing the suit. The court entered a take-nothing judgment in favor of Pollman, Fonberg and Harpet Investments after denying Exxon's motion to disregard these findings and for a judgment notwithstanding the jury's verdict. Exxon claims on appeal that the purchase option was not ambiguous and that the court should have interpreted the option as granting it the right to exercise the option at any time while the lease was in effect. Furthermore, Exxon contends that the evidence was legally insufficient to support the jury's findings that it had waived its right to exercise the purchase option and that the original parties to the lease had intended that the purchase option could only be exercised during the fifteen-year initial term. Finally, Exxon argues that the finding on attorney's fees was against the great weight and preponderance of the evidence.

The Texas Supreme Court reiterated the rules governing the interpretation and construction of contracts in *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in the light of the circumstances present when it was entered. *Id.* at 394. If a contract is worded so that it can be given a certain or definite legal meaning, then it is not ambiguous, and the construction of the contract is a matter of law for the court. *Id.* at 393. However, a contract is ambiguous if its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *Id.* The court's primary concern when construing a contract is to ascertain the true intentions of the parties. *Id.* When construing a contract, the court should examine and consider the entire contract in an effort to give effect to all of its provisions so that none of its provisions will be rendered meaningless. *Id.* We will examine the lease and the purchase option with these rules in mind.

In its first three points of error, Exxon contends that the purchase option was unambiguous and that the court erred when it submitted the case to the jury on special issues and refused to grant an instructed verdict that the option could be exercised at any time while the lease was in effect. All parties agree that the language used in other parts of the lease gives the purchase option one definite and certain meaning with respect to when it can be exercised, but they reach opposite conclusions as to that meaning. Exxon argues that the meaning of the phrase "during the term of

this lease," which is used in the purchase-option provision, can be best determined by considering how a similar phrase "during the term hereof" was used in paragraph VIII, which provides:

> Lessors covenant that Lessee shall have quiet enjoyment and *peaceable possession* of the above described premises *during the term hereof,* further covenanting that they are well seized of said premises, have good right to lease the same, and warrant and agree to defend the title thereto and to reimburse and hold Lessee harmless from all damages and expenses which Lessee may suffer by reason of any restriction, encumbrances or defects in such title. (Emphasis added.)

Exxon contends that the phrases are identical and that the phrase "during the term hereof," which is used in paragraph VIII, clearly applies to the initial fifteen-year term and any extended term. It points out that the covenants of quiet enjoyment and defense of title must logically extend to the initial term and all extended terms of the lease. Therefore, Exxon reasons that the phrase "during the term of this lease," used in paragraph XIV in connection with the purchase option, must also mean that the purchase option could be exercised during the initial fifteen-year term or any extended term. Exxon insists that any other interpretation would render paragraph VIII meaningless, thus violating a fundamental rule of interpretation. *See Coker,* 650 S.W.2d at 394.

The appellees contend that the two phrases are not similar. Moreover, they argue that in those instances when a provision's application is to extend beyond the fifteen-year initial term, the draftsman used language specifically demonstrating that the provision is to remain operative. By way of illustration they direct our attention to several other paragraphs of the lease. In paragraph III(a) relating to lease payments, the lessee agrees to pay a rental of $376.80 per month "during the remaining fifteen (15) years of the initial term hereof, and during any extended term or terms." Paragraph III(b) concerned excess rentals "accruing hereunder during any ex-

tended term or terms." Paragraph IV set forth the lessor's obligations to carry insurance on the property "during the initial term and any extended term hereof." Paragraph V dealt with the lessor's duty to pay taxes during the initial term and all extended terms of the lease. Paragraph VI employs the phrase "during any term hereof." Since the lease only provided that the option to purchase exists "at any time during the term of this lease," appellees argue that the omission of any language specifically indicating the purchase option's survival into an extended term must be interpreted as limiting the option to the initial fifteen-year term. Exxon counters by pointing out that the first fifteen-year period is always identified throughout the lease as the "initial term." It is never referred to as the "term" of the lease.

The general rule followed in the majority of American jurisdictions is stated in 49 Am.Jur.2d *Landlord & Tenant* § 382 at p. 399.

> As a general rule, where an original lease or agreement to lease provides for an extension or renewal of the lease at the tenant's election, and the tenant elects to renew the lease or extend its term, the time for exercising a purchase option contained in the lease and exercisable during the *term of the lease* is likewise extended. This rule is sometimes based on the ground that the leasehold provisions and the purchase option are inseparable, and that therefore the option is extended or renewed when the lease is extended or renewed. (Emphasis supplied.)

See also Annot. 15 A.L.R.3d 472, 474 § 3 and cases collated therein.

Moreover, in interpreting a provision to determine whether it is ambiguous, the court should consider how a similar phrase, term or provision is used in other portions of the lease. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). The phrase "during the term of this lease," which is used in the purchase-option provision,

should be given the same meaning as the substantially similar phrase "during the term hereof," which is used in paragraph VIII containing the covenants of quiet enjoyment and defense of title. Because the phrases are substantially similar, an interpretation that the purchase option provision did not survive the initial fifteen-year period would also logically restrict the operation of the covenants of quiet enjoyment and defense of title to only the same initial term. Such a construction is not consistent with common sense. We hold that the purchase-option provision was unambiguous and that Exxon could exercise the option during the first extended term of the lease as a matter of law. Therefore, the court erred when it submitted the issue to the jury. We sustain the first three points of error.

The jury found that Exxon had waived the right to exercise the purchase option. In points nine, ten and eleven, Exxon contends that the evidence was legally insufficient to support this finding and that the court erred when it submitted the issue to the jury and also when it later refused to disregard the finding and enter a judgment notwithstanding the jury's verdict. However, Pollman, Fonberg and Harpet Investments argue that the finding was supported by factually sufficient evidence. They contend that Exxon waived the right to exercise the purchase option when it (1) extended the lease beyond the initial fifteen-year term without making any reference to its right to exercise the option, (2) considered remodeling the service station covered by the lease and never asserted that it would exercise the purchase option, and (3) negotiated without ever claiming that it had the right to exercise the purchase option. We do not agree.

■ The evidence is legally insufficient when there is no probative evidence to support a finding or a finding is supported only by a scintilla of evidence. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 363 (1960). When considering a point questioning the legal sufficiency of the evidence, an appellate court can only consider the evidence tending to support the finding, viewing it in the light most favorable to the finding, while indulging all reasonable inferences that may be properly drawn therefrom and disregarding all contrary or conflicting evidence. *Butler v. Hanson*, 455 S.W.2d 942, 944 (Tex.1970). Waiver is the intentional relinquishment of a known right or conduct that is inconsistent with that claimed right. *Baker & Bratton Steel Works v. North River Ins. Co.*, 541 S.W.2d 294, 296 (Tex.Civ.App.—Dallas 1976, writ ref'd). The record does not contain any evidence that Exxon had expressly waived the purchase option. Therefore, we must determine whether there is some probative evidence that Exxon, by its silence, inaction or conduct, has waived the right to exercise the option. Exxon did not have to continually remind Pollman, Fonberg and Harpet Investments that it had the right to exercise the purchase option so as to avoid waiving that right. The option was created by contract for the "term" of the lease, and as long as Exxon did not expressly waive the right or engage in conduct inconsistent with that right, it could exercise the purchase option at any time during the "term" of the lease. Likewise, Pollman, Fonberg and Harpet Investments were obligated to keep that option "open" during the "term" of the lease. See *Humble Oil & Refin. Co. v. Westside Inv. Corp.*, 428 S.W.2d 92, 95 (Tex.1968). Exxon's conduct, whether in extending the initial fifteen-year term, considering remodeling the service station or negotiating with Pollman, Fonberg and Harpet Investments, was not inconsistent with its right to exercise the option to purchase. Accordingly, we hold that the evidence was legally insufficient to support the jury's finding of waiver and sustain points nine, ten and eleven.

■ The court submitted the following issue relating to Exxon's attorney's fees:

What sum of money, if any do you find would compensate Exxon Corporation for reasonable attorney's fees Exxon has, and in reasonable probability will incur [in dollars or cents, if any.].

**306**

a. For legal services rendered in preparation and trial of this cause in this court?

b. For legal services rendered if this case is appealed to the Court of Appeals?

c. For legal services if application is made for writ of error to the Supreme Court of Texas?

d. For legal services if the application for writ of error is granted by the Supreme Court of Texas?

In response, the jury answered "0." Exxon argues in point twelve that this finding was against the great weight and preponderance of the evidence. In considering this point, which attacks the factual sufficiency of the evidence, we must consider all of the evidence in support of and contrary to the jury's finding. *Tuthill v. Southwestern Pub. Serv. Co.*, 614 S.W.2d 205, 214 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). Exxon's attorney presented detailed evidence to the jury in support of its claim for attorney's fees. In light of the evidence presented by Exxon, we find that the jury's finding of "0" was against the great weight and preponderance of the evidence. Consequently, we also sustain point twelve.

We reverse and render the judgment in Exxon's favor and order that it have specific performance of the option to purchase. Accordingly, we order Pollman, Fonberg and Harpet Investments to convey the property covered by the option to Exxon in accordance with paragraph XIV of the lease. Furthermore, we find that the issue relating to Exxon's attorney's fees is severable from the remaining issues. *See* Tex. R.Civ.P. 434. Because the reasonableness of attorney's fees is a question of fact to be determined by the jury, we sever and remand that portion of the judgment relating to Exxon's attorney's fee for a new trial. *See Neal v. Neal,* 606 S.W.2d 729, 732 (Tex.App.—Beaumont 1980, writ ref'd n.r. e.). We do not reach the remaining points of error.