**COLORADO INTERSTATE GAS CO., A Delaware Corporation, Plaintiff-Appellee,**

v.

**HUFO OILS, a partnership, et al., Defendants-Appellants.**

No. 85–1664.

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1986.

Rehearing and Rehearing En Banc Denied Nov. 19, 1986.

Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Marc Skeen, W.B. Browder,

Jr., Midland, Tex., for defendants-appellants.

Eric B. Brown, Steve H. Ozawa, Jeffrey M. Goldsmith, Colorado Springs, Colo., James Austin Fisher, Dallas, Tex., for plaintiff-appellee.

Before GEE and PATRICK E. HIGGINBOTHAM, Circuit Judges, and HARVEY,* District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Hufo Oils appeals a summary judgment declaring that "white oil" or "natural gasoline" extracted from natural gas may not be used to adjust the ratio of oil to gas in a well in order to classify it as an oil well under an operating agreement governed by Texas statute. We affirm.

## I

This case involves gas and oil rights on acreage in the Texas Panhandle Field that have been divided and leased respectively to Colorado Interstate Gas and Hufo Oils. Although numerous issues are raised in this appeal, they all revolve around Colorado Interstate's concern that Hufo will infringe its gas rights under the guise of producing oil. Under Texas law, a drill site is classified as an oil well or a gas well according to the ratio of oil to gas produced by the well.[1] Colorado Interstate fears that Hufo will use a "low temperature extractor" or LTX to liquefy gas at the well site[2] in order to manipulate the ratio of oil to gas and qualify what would otherwise be a gas well as an oil well, thereby enabling Hufo to sell Colorado Interstate's gas. Though Hufo has not yet used an LTX or attempted to count condensed liquids as crude petroleum oil for well classification purposes, Colorado Interstate argues that the question of whether an LTX can be used for such purposes must be decided in order to resolve an immediate contractual dispute between the parties. To explain the dispute, we set forth the history of the current leases, the obligations of the parties under them, and the facts from which the present dispute arises.

### -A-

In 1928, the Amarillo Oil Company assigned to the Canadian River Gas Company "all gas, gas rights, and gas privileges" under ten oil and gas leases, dated from 1916 to 1928, on land owned by Lee Bivins. The oil rights under the leases, which Amarillo retained, reverted to the descendants of Lee Bivins when Amarillo later released them.

In 1939, the Bivins and Canadian River entered an agreement that consolidated the gas rights previously conveyed to Canadian River with gas rights to another 6,320.7 acres of land. In 1949 Canadian River and the Bivins entered into an operating agreement that set forth the parties' "respective rights and obligations in connection with future operations for the production of oil and gas to be conducted upon the premises covered by said consolidated lease agreement." In the agreement, the Bivins as "Oil Operator" agreed to plug and abandon any well that produced oil and casinghead gas in a ratio that would bring it within the classification of a gas well as defined by Texas law.[3] The operating agreement pro-

---

* District Judge of the Eastern District of Michigan, sitting by designation.

1. Wells that produce more than 100,000 cubic feet of gas for each barrel of oil produced are classified as gas wells. *See* Tex.Nat.Res.Code Ann. § 86.002(5)(B) (Vernon 1978) (formerly Tex.Rev.Civ.Stat.Ann. art. 6008, § 2(d)(b) (Vernon 1962)).

2. An LTX is a gas processing unit that condenses or liquefies hydrocarbons in a gas stream by refrigerating them to temperatures below zero degrees Fahrenheit, producing what is known as "white oil" or "natural gasoline," *see* Tex.Nat. Res.Code Ann. § 86.002(11) (Vernon 1978) (defining "natural gasoline").

3. Specifically, the Operating Agreement states in paragraph 10:

   For the purpose of this agreement, the term "casinghead gas" shall mean any gas and/or oil vapor indigenous to an oil stratum and

vided that it "shall be co-extensive with the term of [the 1939] consolidated lease agreement."

In 1951, Canadian River merged with Colorado Interstate and assigned all of its rights under the 1939 consolidated lease and the 1949 operating agreement to Colorado Interstate. In 1954, Colorado Interstate and the Bivins executed a "New Consolidated Lease," which replaced the 1939 Consolidated Lease and applied to the same acreage.[4]

For nineteen years, Colorado Interstate and the Bivins coexisted as gas and oil operators under the 1949 operating agreement and the 1954 lease. In 1983, the Bivins granted an "Oil and Casinghead Gas Lease" to Hufo Oils on some of the land within the geographical scope of the operating agreement. Hufo's rights under the lease were expressly made subject to the terms of the 1949 operating agreement.[5] Hufo then applied to the Texas Railroad Commission for permission to drill eight wells on property where Colorado Interstate already owned and operated a gas well.

After Hufo submitted its application, Cabot Pipeline Corporation offered to purchase Hufo's future casinghead gas production from the acreage. Under the terms of the operating agreement, however, Colorado Interstate had a right of first refusal on Hufo's casinghead gas production from the property.[6]

Cabot's final purchase proposal included the following provision:

> The gas shall be delivered without prior processing for production extraction except that Seller may extract by use of a

---

produced with commercial and paying quantities of oil from the same stratum, and shall be considered as part of the oil and oil rights.... Notwithstanding the above and foregoing definition of "casinghead gas," or any other provision in this agreement, it is understood that Oil Operator shall not produce, but shall plug and abandon or shut in, any well drilled or operated by Oil Operator which may produce both oil and casinghead gas in proportions which come within the classifications of a "gas well" as now defined by the statutes of the State of Texas.

4. The 1954 agreement stated that "the New Consolidated Lease ... shall supersede in all respects the said Consolidated Lease Agreement dated May 1, 1939...." However, it also specifically provided:

> The original "A" Lease [in the 1939 agreement] as modified and changed hereby, covering the lands described in Exhibit "A" hereof and designated hereunder as the "New Consolidated Lease" shall, subject to the terms and provisions hereof, be and remain in full force and effect as long as gas is produced from the premises.

5. The 1983 lease to Hufo provides:

> The oil and casinghead gas and oil and casinghead gas rights in certain of the lands described in this lease are subject to the provisions of the instrument styled "Operating Agreement" dated August 18, 1949, recorded in Volume 1365, page 883, Deed Records of Potter County, Texas, entered in between Mary E. Bivins, et al, as "Oil Operator," and Canadian River Gas Company, as "Gas Operator." The rights and privileges granted to Lessee and the obligations imposed upon Lessee herein are and shall be subject to the provisions of said Operating Agreement insofar as it relates to any given tract of land which is described therein and in this lease, and Lessee agrees to be bound by and to assume the obligations imposed upon the Oil Operator in said Operating Agreement as to each such tract of land just as though Lessee had been named as the Oil Operator therein rather than Mary E. Bivins, et al, and Lessee shall succeed to benefits accorded to Mary E. Bivins, et al, in said Operating Agreement insofar as they relate to each such tract of land.

6. Specifically, Colorado Interstate's rights are outlined in the operating agreement as follows:

> In the event Oil Operator shall at any time, and from time to time, receive, and desire to accept, a bona fide offer to purchase all or any part of its casinghead gas production from lands covered hereby, for ultimate consumption outside of the Texas Panhandle gas field, Oil Operator shall notify Gas Operator, in writing, of all the terms and conditions of such offer, and for a period of thirty (30) days after receipt of such notice, Gas Operator shall have, and Oil Operator hereby grants to Gas Operator, the right, privilege and option to purchase such casinghead gas upon the terms and conditions of the offer as set forth in the notice. If Gas Operator shall refuse or fail to exercise such optional right within the period specified, then Oil Operator shall be privileged to accept the original offer in accordance with the terms and conditions specified in the notice to Gas Operator.

lease separator or LTX unit a maximum of .63 gallons of heavy hydrocarbon liquids per MCF to maintain the gas-oil ratio of each lease.

Hufo executed a "Casinghead Gas Purchase and Processing Agreement" with Cabot and forwarded the agreement with a letter to Colorado Interstate, stating that Colorado Interstate

shall have in accordance with said paragraph 11 [of the operating agreement] thirty (30) days from receipt of this notice in which to exercise your option to purchase the casinghead gas production from Hufo Oils' lease on the same terms and conditions as set forth in the enclosed offer.

Colorado Interstate responded:

Please be advised that Colorado Interstate Gas Company hereby accepts your offer to sell "casinghead gas" (as "casinghead" gas is defined in Paragraph 10 of the Operating Agreement) from the above-described acreage only, under the terms of the Cabot Agreement to the extent the terms of the Cabot Agreement are not violative of the provisions of the August 18, 1949, Operating Agreement or the laws, rules or regulations of any governmental agency having jurisdiction herein. *For example, the use of gas processing units such as LTX units to maintain or adjust a well's gas/oil ratio is not permitted by the Operating Agreement.* (emphasis added)

Finally, Hufo met this response as follows:

The Operating Agreement does not prohibit the use of gas processing units. Your letter of December 22, 1983 is a rejection of the above referenced agreement. Hufo Oils declines to accept your counter-offer as set forth in said letter.

-B-

Colorado Interstate brought a declaratory judgment action pursuant to 28 U.S.C. § 2201, seeking, *inter alia*, a declaration whether Colorado Interstate had accepted Hufo's offer insofar as it did not violate the operating agreement, and whether Hufo could use hydrocarbon liquids condensed from gas with an LTX unit to classify a well as an oil well under the agreement and Texas statute.[7]

Ruling on Colorado Interstate's motion for summary judgment, the district court held that liquids condensed from a stream of natural gas by an LTX unit could not be counted as "crude petroleum oil" to classify a well as an "oil well" under Texas law. It also held that Hufo's offer to sell casinghead gas to Colorado Interstate violated the operating agreement because it authorized Hufo to operate "gas wells." Finally, the court held that Hufo's offer violated the operating agreement because it allowed Hufo to sell a portion of its casinghead gas production to parties other than Colorado Interstate "by condensing the gas to its liquid phase and selling it as such." *Colorado Interstate Gas Co. v. Hufo Oils*, 626 F.Supp. 38, 46 (W.D.Tex.1985).

In this appeal, Hufo raises a number of issues. First, it argues that the district court erred in granting summary judgment on the terms of the 1949 operating agreement, for the agreement expired when the 1954 consolidated lease superseded the 1939 lease. Second, Hufo argues that the court was without jurisdiction to decide whether a well may be classified as an oil well by counting liquids condensed from a stream of natural gas, for the question is not ripe for adjudication. Alternatively, Hufo argues that liquids condensed from gas may be counted as crude petroleum oil for well classification purposes, or that genuine questions of material fact on this issue precluded summary judgment. Finally, Hufo argues that the court erred in holding that its offer authorized it to sell a portion of its casinghead production to third parties.

**7.** Colorado Interstate also requested declaratory relief about whether Hufo's offer was invalid because it tendered only a portion of the casinghead natural gas stream, and whether the offer was invalid because it tendered a fully executed gas purchase contract. Those issues are not before us on appeal.

## II

We must first decide whether the 1949 operating agreement controls the issues Colorado Interstate raised. The operating agreement states that its term is "co-extensive with the term of the [1939] Consolidated Lease Agreement." Because the 1954 New Consolidated Lease between Colorado Interstate and the Bivens states that it "supersede[s] in all respects the Consolidated Lease Agreement dated May 1, 1939, and all amendments thereto," Hufo now argues that the operating agreement became a nullity in 1954 when the 1939 lease was superseded.

█ Contrary to Hufo's assertion, the language making the operating agreement "co-extensive" with the 1939 lease and the language stating that the 1954 lease supersedes the 1939 lease do not unambiguously manifest the parties' intent to terminate the operating agreement in 1954. In *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 & n. 5 (Tex.1981), the Texas Supreme Court indicated that a court must consider contractual language in light of the circumstances surrounding execution in order to determine whether the language is ambiguous. We first consider whether, in light of the substantial oil and gas rights at stake, the parties would have intended to terminate the operating agreement that set forth their respective rights under the leases without any other agreement replacing it. We believe they would not. In addition, by its own terms the 1954 New Consolidated Lease preserves "in full force and effect" the original "A" lease in the 1939 Consolidated Lease. *See supra* note 4. This language and the surrounding circumstances force us to conclude that the contractual provisions Hufo cites are ambiguous.

When a contract is ambiguous, the court may examine the conduct of the parties to the contract to learn the parties' interpretation. *Sun Oil Co.*, 626 S.W.2d at 732. The district court found:

No party which executed the 1954 New Consolidated Lease has ever asserted or suggested that the Operating Agreement

was terminated in 1954 by the New Consolidated Lease. Indeed, the Bivins interests cited, enforced, recorded and endeavored to comply with the Operating Agreement after 1954.

*Colorado Interstate Gas Co.*, 626 F.Supp. at 40 n. 2. Furthermore, the lease executed between the Bivens and Hufo provided that "[t]he oil and casinghead gas and oil and casinghead gas rights in certain of the lands described in this lease are subject to the provisions of the instrument styled 'Operating Agreement' dated August 18, 1949...." Indeed, it is unlikely Hufo would have offered to sell its casinghead gas to Colorado Interstate instead of Cabot if it did not *itself* believe the operating agreement to be valid.

█ The Texas Supreme Court has stated:

No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed.... The court should adopt the construction of the instrument as placed upon it by the parties unless there is clear language in the instrument indicating an intention to the contrary.

*Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) (citations omitted). The record establishes that since 1954 the Bivens have repeatedly enforced the operating agreement against Colorado Interstate, that the Bivens recorded the agreement in 1980, and that the Bivens made at least four leases within the last ten years—including Hufo's lease—subject to the operating agreement. Hufo did not dispute these facts, but only challenged their relevance in interpreting what Hufo characterized as an unambiguous contract. Since the contract is ambiguous and these undisputed facts indicate that the parties considered the operating agreement to be valid, we agree with the

district court that Hufo's claim that the agreement terminated must fail.

### III

Hufo argues that, even if the operating agreement is effective, the court lacks jurisdiction to determine whether liquids condensed from casinghead gas [8] may be considered crude petroleum oil to qualify a well as an oil well. Hufo asserts that the issue is not ripe for adjudication because it is speculative: Hufo has not completed any wells, and when it does the wells may not need an LTX to meet the definition of oil wells. The issue, thus, would best be decided if and when Hufo attempts to use an LTX to alter the gas-oil ratio of a well. Hufo also argues that the "white oil" issue is not material to a declaration of Colorado Interstate's current contract rights.

■ Hufo may be correct that the present dispute must encompass the "white oil" issue for the issue to be justiciable. Were Colorado Interstate seeking only to enjoin Hufo's use of an LTX to qualify a well as an oil well, the possibility of that use might well be so remote that this action would not present a "case or controversy," a constitutional requirement that goes to our very jurisdiction. Nevertheless, we have jurisdiction because resolution of the "white oil" issue is material to a determination of whether Colorado Interstate still has the right of first refusal on Hufo's future casinghead gas production.

The operating agreement allocates the rights to oil and gas on the leases in accordance with the statutory classifications in Texas law. Hufo has the rights to oil and gas from oil wells, and Colorado Interstate has the rights to oil and gas from gas wells. Hufo cannot sell oil and gas from gas wells, just as Colorado Interstate cannot sell oil and gas from oil wells. In addition, the operating agreement gives Colorado Interstate the right of first refusal on sales of gas from Hufo's oil wells. Until Hufo provides Colorado Interstate

the chance to purchase gas under terms in accord with the operating agreement, it may not sell the gas to anyone.

Hufo offered to sell its casinghead gas production to Colorado Interstate, but the sales contract permitted Hufo to use a lease separator or LTX to maintain a well's gas-oil ratio. If Texas law allows such a use for a lease separator or LTX, then Hufo's offer complied with the operating agreement and satisfied Hufo's duty to give Colorado Interstate the right of first refusal on its casinghead gas. Accordingly, Hufo's sales contract with Cabot would be valid because, under Texas's "Mirror Image" rule that an acceptance must mirror the terms of the offer, *see, e.g., Humble Oil & Refining Co. v. Westside Investment Corp.,* 428 S.W.2d 92, 94 (Tex.1968), Colorado Interstate's response was not an acceptance.

If, however, Texas law does not permit the use of a lease separator or LTX to maintain a well's gas-oil ratio, then Hufo's offer did not comply with the operating agreement, but attempted to modify the operating agreement to allow Hufo to operate and sell gas from wells to which Hufo had no right under the original agreement. Although Hufo and Colorado Interstate are free to modify the operating agreement, Colorado Interstate's rejecting Hufo's offer to do so does not free Hufo to sell its production to others—even though Hufo couched the modifications as an offer to sell gas. Indeed, Hufo's offer, at least in part, gave Colorado Interstate the opportunity to purchase gas to which Colorado Interstate already had the rights. Thus, if Texas law does not allow the use of "white oil" to adjust a well's gas-oil ratio, then Hufo has not complied with the operating agreement and cannot sell its future production to Cabot.

Consequently, Colorado Interstate's present right to purchase Hufo's casinghead gas from future production depends,

---

**8.** The operating agreement defines "casinghead gas" as "any gas and/or vapor indigenous to an oil stratum produced with commercial and paying quantities of oil from the same stratum, and shall be considered as part of the oil and oil rights."

at least in part, on the resolution of the "white oil" issue.

## IV

The operating agreement obligates Hufo to plug and abandon any well that produces oil and gas in a ratio within the definition of "gas well" under Texas statute. In 1949, when the agreement was executed, the definitions of "oil well" and "gas well" were found in Tex.Rev.Civ.Stat.Ann. art. 6008, § 2 (current version at Tex.Nat.Res. Code Ann. § 86.002 (Vernon 1978)):

(d) The term "gas well" is any well (a) which produces natural gas not associated or blended with crude petroleum oil at the time of production, or (b) which produces more than one hundred thousand (100,000) cubic feet of natural gas to each barrel of crude petroleum oil from the same producing horizon, or (c) which produces natural gas from a formation or producing horizon productive of gas only encountered in a well bore through which crude petroleum oil also is produced through the inside of another string of casing.

(e) The term "oil well" is any well which produces one (1) barrel or more of crude petroleum oil to each one hundred thousand (100,000) cubic feet of natural gas.

The district court interpreted the statute to mean that the classification of a well may not be changed through the use of an LTX unit. The court observed that to consider a gas to be "crude petroleum oil" after processing in an LTX unit would completely destroy the plain classifications in the statute, for all wells could use an LTX to qualify as oil wells. *Colorado Interstate Gas Co.*, 626 F.Supp. at 45. In the absence of a dispositive state court ruling on the issue, the district court relied on *Clymore Production Co. v. Thompson*, 13 F.Supp. 469 (W.D.Tex.1936), in which a federal district court, interpreting this same statute, held that liquid extracted from gases at the casinghead is not crude petro-

leum oil within the meaning of the statute. *Id.* at 470–71.

Hufo insists that Texas law plainly allows liquid obtained through a lease separator or LTX to count as crude petroleum oil in determining a well's classification. Hufo argues that *Clymore*, a federal case, is not binding and conflicts with state law on the issue. More creatively, Hufo reads the definition of "natural gasoline" in art. 6008, § 2(j) to mean that casinghead gas is not natural gas. While it concedes that gasoline manufactured from gas wells is natural gas, it argues that gasoline manufactured from casinghead gas produced by oil wells is oil.

■ We are not persuaded by Hufo's circular arguments and word games. Although gasoline produced from casinghead gas may be "oil produced" from a well under leases reserving a portion of the oil produced to the lessor, *see, e.g., Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 784–85 (Tex.Civ.App.1928), it is not crude petroleum oil within the meaning of the statute. The characterization of natural gasoline as oil for purposes of a lease royalty—and Hufo's characterization of gas as casinghead gas—depends on the initial determination that the well is an oil well. Art. 6008, regulations interpreting art. 6008, and Texas case law all indicate that liquid produced from a lease separator or LTX unit is "natural gas," not "crude petroleum oil," for determining a well's classification.

Art. 6008, § 2(j), applies the term "natural gasoline" to "gasoline manufactured from casinghead gas or from any natural gas." Hufo reads this definition to mean that casinghead gas is not natural gas: otherwise the statute would have defined natural gasoline with reference to natural gas only. The better reading of the definition, however, is that the legislature wanted to foreclose argument about whether gasoline produced from casinghead gas was natural gasoline; therefore, the legislature included casinghead gas specifically, even though it considered it a form of natural gas. This reading is supported by

art. 6008a, § 3(h), which speaks of "[a]ny natural gas, including casinghead gas, produced from any gas well or oil well in this State...." Thus, the statute plainly considers casinghead gas to be one form of natural gas.[9]

The Texas Railroad Commission also recognizes that liquid produced from any form of natural gas, including casinghead gas, cannot be considered as oil in classifying a well. In Tex. R.R. Comm'n, Oil & Gas Div. Docket No. 20–550, General Order Classifying Gas Wells Producing Condensate in the State of Texas (Jan. 19, 1939), the Commission adopted an approach to classification identical to that used in *Clymore*. In its current form, the rule states:

A well which produces hydrocarbon liquids, a part of which is formed by a condensation from a gas phase and a part of which is crude petroleum oil, shall be classified as a gas well unless there is produced one barrel or more of crude petroleum oil per 100,000 cubic feet of natural gas; and that the term "crude petroleum oil" shall not be construed to mean any liquid hydrocarbon mixture or portion thereof which is not in the liquid phase in the reservoir, removed from the reservoir in such liquid phase, and obtained at the surface as such.

Tex. R.R. Comm'n, 16 Tex.Admin.Code § 3.69 (April 1, 1985). This rule clearly precludes the classification as "crude petroleum oil" of liquids condensed in a lease separator or LTX unit.

Finally, while this appeal has been pending, the state courts of Texas have addressed the "long-festering dispute between oil and gas producers in the Panhandle as to whether so-called 'white oil' can be counted as oil for well-classification purposes," *Hufo Oils v. Railroad Commission of Texas*, 717 S.W.2d 405, 406, (Tex. App.1986), and held:

[Section] 86.002, by its unambiguous terms, provides that natural gasoline is not crude petroleum oil for purposes of well-classification. "Oil" is defined as "crude petroleum oil." An oil well is one which produces one barrel or more of *oil* to each 100,000 cubic feet of natural gas, while a gas well is one which produces more than 100,000 cubic feet of gas to each barrel of *oil*. The definitions of "oil well" and "gas well" refer not to natural gasoline, but instead to *"oil"* which means *crude petroleum oil.*

"Crude petroleum oil" refers to a substance in the ground in its natural and unrefined state. "Natural gasoline," defined by § 86.002(11) as a substance *manufactured* from casinghead gas or other gas, cannot be "crude." Moreover, the Commission's Statewide Rule 79(7) specifically declares that crude petroleum oil must be naturally in a liquid state.

*Hufo Oils*, at 408 (citations omitted) (emphasis in original).

*Hufo Oils* construed the current statute, but the 1949 statute contained almost identical language. Nothing indicates that the state's construction of the 1949 statute would differ in any way from that given the current statute in *Hufo Oils*. Though the *Hufo Oils* court is not the highest court

---

9. Hufo, at times, seems to assume that once gas is called casinghead gas, the well from which it comes is an oil well. This notion comports with common usage, but does not comport with the statute. Hence, the confusion. In general usage, "casinghead gas" is gas from an oil well. Black's Law Dictionary 273 (4th ed. 1968). More precisely, however, "casinghead gas" is gas that comes up a well in the space between the casing and the smaller tubing in which oil ascends. 42 Tex.Jur.2d *Oil & Gas* § 3 (1963). Under this more precise definition—the one most compatable with the statutes and Railroad Commission rules—a well may produce casinghead gas, yet not produce enough oil through the inner tubing to meet the statutory requirement of one barrel of oil to each 100,000 cubic feet of gas. While the oilman might call that well an "oil well" because it produces some oil and has the casing and inner tubing characteristics of oil wells, the statute considers the well to be a gas well. The question does not turn on whether the gas is casinghead gas, but on the ratio of oil to gas.

of Texas, "when the supreme court of a state has not spoken to a particular issue, the well-established practice of this Circuit is to follow the opinion of the highest court which *has* written on the matter." *Birmingham Fire Insurance Co. v. Winegardner & Hammons, Inc.*, 714 F.2d 548, 550 (5th Cir.1983) (emphasis in original). Indeed, we have also said that "a decision of the [Texas] Court of Civil Appeals is controlling on questions of state law in this court, absent strong indication that the Texas Supreme Court would decide the issue differently." *Mott v. Mitsubishi International Corp.*, 636 F.2d 1073, 1074 (5th Cir.1981). Hufo has presented nothing that persuades us that the Texas Supreme Court would rule differently on the "white oil" issue than did the Texas Court of Appeals.

## V

In summary, we conclude that the 1949 operating agreement governed the relationship between Hufo Oils and Colorado Interstate gas. We also conclude that this court has and the district court had jurisdiction to address the "white oil" controversy because resolution of that controversy was necessary to adjudicate present rights under the operating agreement. Under Texas law as we and the state courts interpret it, liquids condensed through lease separators or LTX units from any form of natural gas cannot be considered "crude petroleum oil" for well classification purposes. Hufo's offer contained a provision allowing it to do that which was contrary to Texas law and which modified Colorado Interstate's rights under the operating agreement; therefore, the offer did not satisfy Hufo's duty to give Colorado Interstate the right of first refusal on its casinghead gas. Hufo consequently is not free to sell the gas to third parties.[10] The decision of the district court is AFFIRMED.

10. Because we hold as a matter of law that "natural gasoline" condensed from any form of natural gas, including casinghead gas, may not be counted as crude petroleum oil in classifying

an oil well, we need not reach Hufo's contention that genuine issues of material fact precluded the district court from granting summary judgment on this issue.